**UNITED STATES of America**

**v.**

**Richard Lee JACKSON, Raymont Trink Barefield and Jonnie Coleman a/k/a "Trash", Raymont Trink Barefield, Appellant.**

**No. 17118.**

United States Court of Appeals Third Circuit.

Argued Sept. 20, 1968.

Decided Nov. 26, 1968.

Certiorari Denied April 1, 1969.
See 89 S.Ct. 1287.

Jerome R. Balka, Balka & Balka, Philadelphia, Pa., for appellant.

John R. Galloway, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on brief) for appellee.

Before McLAUGHLIN, KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

On October 10, 1966 appellant and two codefendants who have not appealed were convicted of robbing the Cedartown Mall, Pennsylvania branch of the Germantown Savings Fund Bank on March 23, 1966. Admittedly three men committed said robbery and escaped in a light green Oldsmobile.

The bank was robbed at about 10:30 that morning. Mrs. Jacobs who lived at 7932 Pickering Street, within ten blocks of the bank, testified that she was vacuuming her living room in the front part of her house. She looked out the large front window and saw a red Thunderbird automobile pull up and start to park in front of her house. There were two people in the car. One of them "on the passenger side got out immediately and as he got out he looked up the street, which would be east, and then he looked around like towards our house and up at our house so that I looked him straight in the face." She identified appellant sitting in the courtroom as that man. She said there was another car in the vicinity at that time in motion. Just as the men in the Thunderbird "were getting out, another car came up the street going in the same direction, which is east. It was an Oldsmobile. It was light green in color." The men from the Thunderbird walked up rather slowly and got into the Oldsmobile which pulled away and proceeded up the street. Mrs. Jacobs said she saw the three men again "15 to 20 minutes after they left in the Oldsmobile." As to this she testified that "I looked out there was one man getting into the Thunderbird, the back seat of the Thunderbird, from my side, and behind him there was a man coming walking rather fast, and he also got into the back seat, and then running up the street I could see a third man, who got into the driver's seat. Now I did recognize one of these men as the man that I just described earlier (appellant)." The Thunderbird drove away very fast. Mrs. Jacobs gave a partial identification of the license plate. She did not recognize the other two men in the courtroom, saying that she had not seen their faces clearly. The Oldsmobile was found by an F.B.I. agent in the vicinity of the 7900 block of Pickering Street at Greenwood Street. There was a woman's black stocking on the front seat.

The branch manager of the bank actually saw the holdup. While he was telephoning the police he saw the Oldsmobile in question outside the bank and at that time obtained its license number.

Mrs. Shermer as a witness said that on the particular morning she was proceeding in an automobile towards the shopping center where the branch bank is located when "There was a car passed us going quite fast." The car was pale green, she thought it was an Oldsmobile. There were three men in the car "* * the one man sitting in the back seat, he had a patch on the left side of his face near the collar line." The hidden bank camera took a picture of one of the robbers who wore a mask and had a white bandage on his neck. Appellant had been treated for a laceration of the neck, the hospital records indicating the right side of the neck. With reference to this, the resident doctor who sutured

the cut said that his notations on the sheet quite possibly could be mistaken.

There was also evidence that appellant the afternoon of the robbery bought some two hundred dollars worth of wearing apparel. That same day or the next, appellant went to a television appliance store and purchased a certain portable television set for $219. He had been in the store two or three times previously. The appellant, testifying in his own behalf, said he was a maintenance man and earned $1.25 an hour; that he had been unemployed for at least a week prior to the robbery.

There was no motion for appellant at the conclusion of the testimony to direct a verdict of acquittal in his favor.

The trial court in a clear, proper charge, inter alia, outlined the federal offenses stated in the indictment, commented carefully that the indictment itself was no evidence of committed crimes; stressed the presumption of innocence; gave a thoroughly sound definition of reasonable doubt and the necessity of finding appellant and the other two defendants guilty beyond such reasonable doubt for conviction of each of them. Later on the judge gave a detailed explanation of the crime alleged in each of the four counts of the indictment. The court also instructed the jury that there was both direct and circumstantial evidence in the case. We note here that this was the evidence situation as to the appellant. There was some direct evidence against him and also circumstantial. Regarding the latter, the court generally said:

> "That is proof of certain facts and circumstances upon which the existence or non-existence of other ultimate and final facts in issue may be logically inferred. This evidence is not to be rejected or denied consideration merely because it is such, but should be carefully scrutinized and considered. * * * It should have its just and fair weight with you as jurors together with all the evidence before you, both circumstantial evidence and direct * * *."

It is our view that the trial proofs as above indicated presented a true jury question as to whether appellant was guilty of the crimes charged against him in the indictment and that said question was fully and accurately given to the jury by the trial court. Wartson v. United States, 400 F.2d 25 (9 Cir. 1968); cf. Calhoun v. United States, 399 F.2d 999 (D.C. Cir. 1968).

We find no merit in appellant's point regarding the evidence received of his financial condition immediately after the robbery and that it was plain or in any way prejudicial error not to specifically charge regarding his possession, as was testified at the trial, of money immediately after the robbery.

Appellant finally argues that the trial judge "completely failed to instruct the jury on the law or any of the essential elements of the crime charged." As set out above the court fully and fairly charged on the pertinent law and on the elements of the crimes charged.

The judgment of the District Court will be affirmed.