**UNITED STATES of America**

v.

**John Clifford CHANEY, Appellant, et al.**

No. 19548.

United States Court of Appeals,
Third Circuit.

Argued May 21, 1971.

Decided Aug. 20, 1971.

**572**

I. Leonard Hoffman, Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot, Philadelphia, Pa., for appellant.

Victor S. Schwartz, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a conviction for aiding and abetting three co-defendants in the commission of an armed robbery of a bank on May 26, 1969, in violation of 18 U.S.C. §§ 2113(a), 2113(b), 2113 (d) and Section 2 of Title 18. Defendant Chaney was found guilty of all four counts and on January 22, 1971, was sentenced to eight years' imprisonment. Co-defendant Sheppard was also convicted. However, the jury acquitted co-defendant Williams and the court granted co-defendant Anderson's motion for judgment of acquittal. After trial, a hearing was held by the court at which evidence was received concerning defendant Chaney's pro se motion attacking the verdict on the grounds that he was denied effective assistance of counsel. After completion of the hearing, argument was heard on defendant Chaney's motions for a judgment of acquittal and/or a new trial, and they were denied. This appeal from the January 22, 1971, sentence followed.

### I. Claimed Insufficiency of Evidence to Support The Verdict

█ Chaney first claims that the evidence was legally insufficient to sustain a verdict of guilt on any of the four counts. He maintains that the testimony of Government witness Meginley was mere speculation and therefore inadmissible. We disagree.

Meginley's testimony indicated that the vehicle used as a get-away car in the bank robbery was the vehicle borrowed by Chaney from witness Mathis on the day of the robbery. Meginley testified that on May 26, 1969, while he was in a public telephone booth about 1:30 P.M., he observed two or three men, one of whom was holding a bag, running towards him. They entered a parked vehicle being operated by a black man. He saw the driver's back and arm, from which he estimated that he was heavy set, weighed about 220 pounds, and was

about 45 years old.[1] Before the vehicle sped away, Meginley was able to note the number on the license plate and a general description of the car. He testified that the license number was Pennsylvania 898–280 and described the vehicle as a 1962 Chevrolet with a tan or bronze color body and a black vinyl or convertible top.[2] The next day, in the company of FBI agents, he identified a car belonging to witness Mathis as of "similar appearance" to the one observed on May 26. He testified that the license plate number was Pennsylvania 898–28A, and the vehicle was a 1962 Chevrolet and had a tan or light brown color. He testified that the only difference between the cars he observed on May 26, 1969, and on May 27, 1969, was that the latter had a damaged fender. Two of the FBI agents

who accompanied Meginley on the 27th testified that the car Meginley observed on that date had license plate 89A–280 and was a 1962 Chevrolet which was grayish or tannish in color.[3] Contrary to Chaney's contention that the trial judge should have instructed the jury on his own initiative that this testimony was incompetent, we have concluded that the testimony on this point was admissible and, at the least, that its receipt was not plain error. See F.R.Crim.P. 52. The similarity of the cars identified on the 29th and 30th was striking, both as to license plate numbers and general description.[4] Any discrepancies in the testimony were properly left to evaluation by the jury.

■ There was other circumstantial evidence supporting the conclusion that

1. After Meginley had described seeing the back of the driver of the car with a "heavy arm" and after the judge had sustained an objection to a request that such witness identify anyone in the courtroom having "an arm similar to the arm you saw," the judge refused to sustain an objection to the question "Would you describe for us the age of the man behind the wheel?" In response, Meginley testified that: "I estimated he was like a forty-five year old man, around there, forty or forty-five. He was a heavy-set person, a lot like a man 220 or something. I am estimating from the size of his arm." Chaney's contention that the answer was unresponsive and incompetent is rejected. The back and side view of an auto driver, including such items as hair color and arm size, may be a sufficient basis to estimate age after estimating weight. Also, no motion was made to strike the last two sentences of the above-quoted answer.

2. Witness Surgenewich testified that he had Pennsylvania license number 898–280 on his car, a two-tone blue, 1963 Comet and that on the day of the robbery the car was in Wyoming, Pennsylvania, 130 miles from Philadelphia. This evidence presented a sufficient basis for the jury to infer that Mr. Meginley was wrong in his initial impression that the car seen on the day of the robbery had a number whose third digit was an eight rather than an A.

3. The jury was entitled to find that the testimony of the trained FBI agents ac-

curately stated the license plate number as 89A–280 and that Meginley's testimony inadvertently erred in misstating a different digit on the license plate as of each of the dates he saw the car (May 26 and May 27).

4. Mathis testified that he did not know the license number of his car and that the car was a light tan, four-door sedan, 1962 Chevrolet, without a black vinyl or convertible top. We agree with the trial judge who stated (N. T. 149 of Document 43 [hearing of 1/6/70], where rulings on post-trial motions were announced): "I recognize that various witnesses described this car differently. Some described it as tan, some as bronze, some as gray. There were discrepancies as to whether it had a dark top, whether it was a convertible top, or vinyl top, or what, but it is significant that each witness who saw both that car and the Mathis car invariably described both cars the same way, and there is no question but that the jury could properly interpret the evidence of witnesses who saw both vehicles that they were one and the same vehicle in the opinion of such witness. Add to that the striking similarity of the license numbers, and there is in my judgment sufficient evidence which would justify the jury in concluding that the car which the defendant Chaney had control of at the time of the robbery was, in fact, the car which sped away from the scene of the robbery. * * *"

the vehicle used as a get-away car in the robbery belonged to Mathis and was borrowed by Chaney on the date of the robbery. Mathis testified he had loaned the car to Chaney about three times, once on a Monday in May or June 1969. On that date Chaney picked up the vehicle between 8:30 and 9:30 A.M. Chaney telephoned Mathis between 12:00 and 2:30 P.M., advising him that he could not get the car started and had left it at Lancaster Avenue. Chaney returned the keys to him later between 2:30 and 3:30 P.M.

The jury was presented with additional evidence connecting Chaney to the crime. For example, witness Taylor testified that on the day she left to return to Detroit with Sheppard, Sheppard and Chaney had left together from Chaney's home sometime after 11:30 A.M., returning in the afternoon. Witness Walker observed Chaney and Sheppard together the night before the robbery. Also, the exculpatory statement by Chaney given to agent Culpepper was false in several respects.[5] The evidence of the flight to Detroit and the fact that Chaney had $800. in his possession about May 29th further supported the verdict.

An examination of all the evidence, including that recounted above, leads us to the conclusion that the evidence against the defendant Chaney made out a strong enough case to permit a jury to find defendant guilty. United States v. Giuliano, 263 F.2d 582 (3d Cir. 1959); United States v. Allard, 240 F.2d 840 (3d Cir. 1957); United States v. Kemble, 197 F. 2d 316 (3d Cir. 1952).

In reaching this conclusion, we state our agreement with the analysis of Judge Fullam stated at the time he denied the post-trial motions on November 6, 1970 (pp. 149–150 of Document 43), as follows:

First, let me say that on the basis of all of the evidence I think the jury could reasonably conclude that the car which sped away from around the corner from the bank was the getaway car for the robbers, that the people who entered the car were the people who robbed the bank.

* * * [T]here is in my judgment sufficient evidence which would justify the jury in concluding that the car which the defendant Chaney had control of at the time of the robbery was, in fact, the car which sped away from the scene of the robbery, and when we add to that the considerable evidence about Chaney's association with Sheppard the morning of the robbery, after the robbery—there is evidence from the witness Tabb that the defendant was together with the defendant Sheppard at the defendant's home on the evening of the robbery at about 5:00 or 6:00 p. m.—the evidence that the defendant and Sheppard both went out to Detroit and were together out there, the evidence that the defendant Chaney lied to the Federal Bureau of Investigation about that trip to Detroit and about various other matters, and the evidence that the defendant was in possession of large sums of money shortly after the robbery. Add all those together and it seems to me that a jury should be permitted to find that the defendant was guilty as charged.

In short, in my judgment that is what we have juries for. It is to sift the evidence, draw the inferences, and come to a conclusion within the limits of their oaths.

While, as I say, I believe this is a fairly close question, I am not disposed to disturb the jury's verdict in this case.

5. In his statement to the agent, defendant Chaney stated that he gave the key back to Mathis about 1 or 1:30 and that he took a bus to Detroit about 3:00 P.M. Mathis testified that he got the key back between 2:30 and 3:30, and that he saw defendant Chaney at 5:00 P.M. in Philadelphia. Another witness testified he saw him at 6:00 P.M. Evidence also indicated that he used a black Ford to travel to Detroit.

For all of these reasons, an order will be entered formally later today which will deny all of the post-trial motions of both defendants, Chaney and Sheppard.

## II. *Alleged Trial Errors*

■ Defendant Chaney asserts that the trial court erred in admitting the testimony of a witness, Ada Tabb, that defendant had large sums of money in his possession subsequent to the robbery. The rule in this circuit is that:

" * * * the sudden unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had an opportunity to commit, is competent evidence of guilt and will support * * * conviction." United States v. Howell, 240 F.2d 149, 158 (3d Cir. 1956), quoting Hansbrough v. United States, 156 F.2d 327, 329 (8th Cir. 1946).

United States v. McKenzie, 414 F.2d 808, 809 (3d Cir. 1969); *See* United States v. Jackson, 403 F.2d 647, 649 (3d Cir. 1968). A showing by the Government that the conditions set forth in this test are met is sufficient to establish a direct connection between the money in Chaney's possession and that which was involved in the crime, as required by Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897). United States v. McKenzie, *supra*, 414 F.2d at 809. Defendant Chaney argues there was no evidence of impecuniosity. We disagree. Agent Culpepper of the F.B.I. testified that defendant advised him that he was taking a two-month break from work as a presser and that he had not worked at all for four weeks. Chaney claimed he had been able to save substantial sums of money and Ada Tabb suggested that he won large sums as a gambler. However, it was for the jury to decide whether to believe or disbelieve this evidence of alternative sources of money. We thus conclude that the testimony indicating that defendant Chaney was impecunious constituted sufficient foundation to admit evidence of possession of large sums of money by the defendant subsequent to the robbery.

■■ Defendant Chaney also argues that the prosecutor, in summation to the jury, improperly "(1) used defendant's exculpatory statement against him as if the same were testimony from the lips of the defendant in the trial at issue, and further, (2) prejudicially stated that consciousness of guilt was revealed by negative omissions of defendant in failing to state assertive facts germane to the Government's evidence concerning the co-defendant and other points at issue." Defendant did not object at trial but now complains of the following statements of the prosecutor:

* * * the 2nd of June Mr. Chaney comes in to make a statement, and he testifies. * * *

Then what does he say? This is only * * * a very short time since the time the bank robbery. * * * What should your recollection be? It ought to be reasonably keen. * * *

Where did you go? * * * Does he in his statement say, "I can tell you I was with Mr. Sheppard that day?"

* * * and he left the house where he lived with Mr. Sheppard in the morning that day. Does he say anything about Mr. Sheppard?

No, there is nothing said about Mr. Sheppard. Mr. Sheppard he stays clear of totally, nothing mentioned about Sheppard at all.

You recall the testimony about Mr. Sheppard being with him. * * * But no, he didn't have anything to do with Mr. Sheppard, if you listen to his statement.

But I suggest to you that he is not telling the facts when he doesn't mention about Mr. Sheppard.

Does he talk about being with Mr. Williams? No, he doesn't mention that either.

* * * The testimony * * * said that * * * at 8:30 in the mornings. Williams came, went out with Mr. Chaney.

Did Mr. Chaney say, "Mr. Williams will tell you I was with him"? Nothing in the statement like that at all. Nothing at all. [181a–182a]

\* \* \* \* \* \*

The thing that really impresses me in the Chaney statement is the fact that it says so little and yet every time it does speak out \* \* \* it does not conform with the evidence. \* \* \*

He doesn't say \* \* \* somebody else may have been behind the wheel of the car picking up my friend Sheppard or picking up my friend Williams \* \* \* as they ran from the bank. He doesn't say anything like that at all. [186a]

Defendant Chaney concedes that exculpatory statements made upon interrogation with intent to divert suspicion or mislead the police, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force. United States v. Smolin, 182 F.2d 782, 786 (2nd Cir. 1950). However, he contends that when the prosecutor commented on omissions, using the present tense, his fifth amendment rights against self-incrimination, as protected by Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), were violated. "The test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Hayes v. United States, 368 F.2d 814, 816 (9th Cir. 1966). The statements of the prosecutor which are objected to came during a long review by him of the events occurring around the time of the robbery and the contradictions between what defendant told the FBI agent and the testimony of various witnesses. Viewed in

the context of the prosecutor's entire address, we think it clear he was charging that defendant Chaney lied by not mentioning Sheppard. We do not think those statements, in this situation, even though phrased in the present tense, were such as would lead the jury to conclude that the prosecutor was commenting on the failure of the accused to testify. *See* Hayes v. United States, *supra; cf.* United States v. Smith, 421 F.2d 1229, 1230 (3rd Cir. 1970). The following comments of the trial judge during his charge further made the prosecutor's meaning clear:

"The government also asks me to point out to you the government's contention that, in addition to the other evidence that they argue with respect to Chaney, it is their contention that his statements to the F.B.I. agent as to his whereabouts on the day of the robbery and as to the means by which he got to Detroit were false and that the fact that he gave false statements is indicative of guilt." (N. T. 879).

Even if there were doubts as to the propriety of the prosecutor's choice of words, it is clear that there has been no plain error in this part of the Government's closing argument. See F.R.Crim. P. 52(b).

■■ We have considered the other trial errors relied on by defendant Chaney and have concluded that either no error or nonreversible error is involved in each such contention.[6]

### III. *Alleged Ineffective Assistance of Counsel*

■ Defendant Chaney contends he was denied his constitutional rights due to ineffective assistance of counsel. His principal point is that his appointed at-

6. The contentions include the alleged inadmissibility of Sheppard's statement, testified to by an F. B. I. agent, that the robot camera picture taken in the bank at the time of the crime was a picture of Sheppard, and the alleged impropriety of the prosecutor's argument to the jury that observation of Chaney's forearm "does not fail to meet" the testimony of Meginley that the driver of the get-away car had "a muscular arm, sort of a heavy arm, the left forearm" in light of the trial judge's volunteered admonition to the jury: "It is quite obvious you can't identify a man by the forearm" (N.T. 177a).

torney should have personally interviewed several potential trial witnesses to support an alibi defense.[7] Of the four possible witnesses Chaney mentions, all were interviewed by a staff investigator from the Defender Office. Both attorneys who were involved in the defense of Chaney testified that the investigator was both skilled and experienced. The investigator found that none of these witnesses could accurately identify the time when they had seen defendant.[8] The investigation reports were discussed by the trial counsel with the first counsel assigned to the case as well as with the defendant himself.

The trial judge, at the conclusion of the post-trial hearing on September 10, 1970, stated that:

7. Defendant Chaney also contends that his trial attorney should have impeached the witness Mathis, who testified at trial that defendant returned the car keys to him between 2:30 and 3:30 P.M. and that he observed defendant between 5:00 and 6:00 P.M., but who told the investigator before trial that he had seen defendant at 3:00. We agree with the trial judge, who stated that "It is doubtful whether any further cross-examination would have made his testimony any more helpful to the defense than it was. It was obvious that he tried to make the time as vague as possible to be helpful to the defendant, and counsel should certainly not be criticized for not wishing to antagonize Mr. Mathis, whose testimony on the whole was as favorable to the defendant as it could be made to be." Further, defendant Chaney contends that counsel should have applied for a severance of his trial from that of the co-defendants. However, the defense attorney testified at the post-trial hearing that he purposely refused to request a severance because he assumed that if the Government tried Sheppard first, and he was convicted on his confession, he would testify against Chaney at the defendant's trial.

8. King Joyner, the bartender of the Gold Coast Bar where defendant Chaney alleged he visited immediately prior to his departure for Detroit, was unable to recall the date in question. Harold Young, a salesman at a shop which defendant

" * * * the witnesses have testified or their testimony has been presented * * * in these post trial hearings, and it is quite clear that the analysis of their testimony as formed by [the trial attorney] from reviewing the file was substantially accurate. None of these witnesses would have been an effective alibi witness at the trial, since none was able to pinpoint the time in any relevant respect." [9]

A review of the evidence as a whole convinces us that counsel's performance was at the level of normal competency demanded by this circuit in Moore v. United States, 432 F.2d 730 (1970).

For the above reasons, the judgment and commitment of January 22, 1971,[10] will be affirmed.

Chaney alleges he visited at 1:05 P.M. after delivering the car keys to Mathis, could not recall the time of day of the purchase closer than early afternoon. Jessie Schultz, the proprietor of the shop where Mathis testified seeing the defendant between 5:00 and 6:00 P.M., stated that the defendant had visited the shop, stating that he was going to Detroit, but could not recall the date. Tyrone Smith, an employee of the Friendly Loan Company, where the defendant Chaney claimed to have been at 1:20–1:25 P.M., confirmed the sales purchase slip as being authentic, but could not recall the time of day except sometime after 12:00 noon.

9. At the post-trial hearing, Joyner testified that he remembered speaking to Chaney on May 26, 1969, at some time during the early afternoon. At the same hearing, Schultz testified that he could not recall the date or time of day in question.

10. We note that, although the notice of appeal filed in November 1970 (Document 36) may be ineffective to challenge the final judgment of January 22, 1971, the Motion For Stay of Execution and Relief Pending Review (Document 48) filed by Chaney pro se on January 27, 1971, is an effective notice of appeal since "it evidences an intention to appeal." See Fitzsimmons v. Yeager, 391 F.2d 849, 853 (3d Cir. 1968) ; cf. United States v. Deans, 436 F.2d 596, 599–600 (3d Cir. 1971).