UNITED STATES of America

v.

Alphonso R. RANDOLPH et al.

Appeal of A. C. WALLER, in No. 71–1231.

Appeal of James WEATHERS, in No. 71–1232.

Nos. 71–1231, 71–1232.

United States Court of Appeals, Third Circuit.

Argued Nov. 11, 1971.

Decided Feb. 28, 1972.

H. David Rothman, Pittsburgh, Pa., for A. C. Waller.

William F. Cercone, Jr., Rainero, Greenberg, Cercone & Berneburg, Pittsburgh, Pa., for James Weathers.

Samuel J. Orr, III, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on brief), for appellee.

Before VAN DUSEN and JAMES ROSEN, Circuit Judges, and BECKER, District Judge.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

This is a bank robbery case. Appellants, A. C. Waller and James Weathers, were arrested along with co-defendants Alphonso Randolph and Keith Johnson for the April 28, 1970 armed robbery of the Century Federal Savings and Loan Association, Shadyside office, Pittsburgh. The grand jury returned a two count indictment against all four charging them with robbing a federally insured savings & loan association, and putting lives in jeopardy during that robbery, in violation of 18 U.S.C. § 2113(a, d), and 18 U.S.C. § 2.[1]

After they were indicted, the appellants escaped from custody[2] and were not reapprehended until after the two codefendants, Randolph and Johnson, had pleaded guilty and been sentenced. When they were returned, Waller and Weathers were tried jointly and, on February 5, 1971, were convicted.[3]

Waller and Weathers contend[4] that there was insufficient evidence to warrant submitting their cases to the jury because the government did not establish their guilt beyond a reasonable doubt. Waller also argues that the trial judge committed reversible error in denying his Rule 16(b) motion for discovery.[5]

---

1. 18 U.S.C. § 2 provides that:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. Waller was apprehended in Wheeling, West Virginia while using an assumed name. Tr. 233–234. Weathers was apprehended in Pittsburgh after attempting to break away from the arresting police officer. Tr. 237–238.

3. Weathers was found guilty on the first count. He was a prior offender and was sentenced to twenty years. Waller did not have any prior criminal record. He was convicted on both counts of the indictment and was also sentenced to twenty years. Waller and Weathers were given the right to parole at the Parole Board's discretion in accordance with 18 U.S.C. § 4208(a) (2).

4. Weathers' appeal was submitted on briefs under 3rd Cir. Rule 12(6). Waller's appeal was considered on briefs and oral argument.

5. Rule 16(b) of the F.R.Crim.P. provides as follows:
   (b) *Other Books, Papers, Documents, Tangible Objects or Places.* Upon motion of a defendant the court *may order* the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government wit-

Ronald Wheeler, who was employed by the Savings and Loan Association, observed three unmasked Negro males walk into the institution on April 28, 1970 and place either ski masks or scarves over their faces. Once inside, one of the three men approached Wheeler, put a loaded gun to his head and directed him to the teller's cage where the other men were in the process of taking the sum of $1,013.58 from a teller. As the three men left, they removed their masks. Wheeler chased them to their intended get-a-way car. Their automobile did not start, so they abandoned it and fled on foot along with a fourth person who had been waiting for them in the automobile. Weathers was identified by Wheeler at a line-up and in court as being one of the robbers.

Kim Morris witnessed the robbery from a store window immediately adjacent to the Savings & Loan building. He followed the robbers to a white Chevrolet. When the car would not start the robbers fled from the vehicle and split up.

Waller and Weathers were seen shortly after the robbery by two local residents. Mrs. Claire Lehman testified that just after she had returned home from shopping, she observed three men run across her lawn to the get-a-way car which was parked in front of her house. She saw them unmasked and was so close to them that one actually bumped her on the way to the car. Several days after the robbery Mrs. Lehman identified Waller and Weathers at a live line-up and again identified both of them in court as being two of the men she saw

running past the car on the day of the robbery. Peter Gray, a professor at the University of Pittsburgh, testified that, while sitting in his backyard shortly after the robbery, he saw the four unmasked robbers run across his lawn.[6] Professor Gray identified Waller in a live line-up held the day of the robbery and identified Waller and Weathers in the court.[7] Weathers was arrested by a police officer shortly after the robbery in the general vicinity of the Savings & Loan Association. At that time, Weathers was sweating profusely and on his person was a bag in which there was found $1,013.58, the same amount taken in the robbery. Taken from this bag was a money band which was traced to the Savings & Loan Association. Waller was apprehended several blocks from the Savings & Loan building immediately after the robbery and he also was sweating profusely at that time.

Appellant's contention that there is insufficient evidence to support the jury's verdict of guilty is without substance.

Waller testified in his own behalf. The gist of his defense was to the effect that he was high on drugs (heroin) and was hitchhiking when picked up by Johnson and Randolph. He claims he fell asleep in the car; did not participate "no way" in a robbery. Waller admitted that there was "another fellow" in the back of the car whom he did not know. He also said that when the three men returned to the car he awakened, became aware that something was wrong and ran with the rest of them.[8]

nesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500. (Emphasis supplied)

6. We have examined the government's trial exhibit showing the physical lay-out of the bank, the streets traversed by defendants, and the position from which witnesses Claire Lehman and Peter Gray observed the defendants. The reliability of the witnesses' testimony is corroborated by this exhibit.

7. No claim is made as to any impropriety in the out-of-court or in-court identifications of Waller and Weathers.

8. Tr. 324. In Waller's brief, footnote p. 6, counsel says: "Of course, Waller's inability to identify the fourth person, particularly in view of Weathers being apprehended with the bag of money, and his escape with Weathers, was a serious factor in judging Waller's credibility. Counsel frankly argued to the jury that Waller may not be telling the truth as to

Appellant Weathers also testified in his own behalf. He denied knowledge of or participation in the robbery. He said he was in the vicinity to seek employment and, as he was walking, a woman behind him was bumped by three men who were running, and one of the men dropped a blue bag. Weathers allegedly picked up the bag, heard coins "jingle," [9] but was apprehended before he had an opportunity to look into it.

■ Testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself. It must be such as the common experience and observation of mankind can approve as probable in the circumstances.[10] This was a case of positive identification as against testimony tending to prove alibi. The jury accepted the positive identification rather than the alibi. Their conclusion is justified by the evidence. As we said in United States v. Chaney, 446 F.2d 571 (3 Cir., 1971) "An examination of all the evidence, including that recounted above, leads us to the conclusion that the evidence against the defendant[s] * * made out a strong enough case to permit a jury to find the defendant[s] guilty."

■ Waller's second contention is that he was wrongfully denied discovery which he was entitled to as a matter of right pursuant to Rule 16(b). More specifically, he claims that the trial judge was required to grant his motion for discovery of any pretrial statements that Johnson and Randolph had made to police and to do so before they were examined on direct as defense witnesses.

As previously mentioned the appellants were indicted along with codefendants Johnson and Randolph, but Johnson and Randolph were tried and sentenced before appellants' trial began. Waller intended to call Johnson and Randolph as defense witnesses because they had "indicated" that Waller was not involved in the robbery and they did not make any prior written or oral statements to the contrary. These representations were apparently not of sufficient assurance to Waller's counsel. He thereupon applied under Rule 16(b) for any prior statements which were made by Johnson and Randolph in the possession of the government. The trial judge denied the application.[11] Despite this ruling Johnson and Randolph were called as defense witnesses. They testified on direct examination that Waller had not participated in the robbery and corroborated Waller's explanation of how he happened to be in the car with the three other defendants. Johnson did not give any statement to the authorities. However, during the cross-examination of Randolph the prosecution did use for impeachment purposes a signed statement Randolph had given to the Pittsburgh police which implicated Waller, Johnson and himself in the robbery. The statement also disclosed that it was Waller who had carried the stolen money out of the bank.

It is argued that if the 16(b) motion had been granted Waller would have uncovered the prior statement and would not have used Randolph as a defense witness. The thesis continues to the effect that if this impeachment statement had not been revealed to the jury Waller "might" have been cleared by Johnson's testimony. This is pure speculation. The evidence against Waller was substantial and the jury verdict reflects their acceptance of the government's factual presentation.

the identity of the fourth man because no black defendant will testify against another. Counsel argued also that this did not necessarily mean that he was not telling the truth about himself."

9. Weathers' brief, pp. 3–4.

10. See In re Perrone 5 N.J. 514, 522, 76 A.2d 518 (1950).

11. The trial began on February 1. Waller's lawyer spoke to the codefendants at the county jail on the following day. Then, on February 3, he made an application for discovery of impeaching evidence in the possession of the Government. Tr. 232.

Rule 16 as adopted by the United States Supreme Court in 1946 was a rather limited rule of discovery. In 1966 the Rule was rewritten and the scope of discovery was expanded. At the same time provisions were made to guard against possible abuses.[12] There are certain basic principles governing the scope of discovery which have been recognized by this court. In United States v. Fioravanti, 412 F.2d 407 (3 Cir., 1969) cert. denied, sub nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969) we held that "an application for relief under the discovery rules is a matter within the sound discretion of the district court and its ruling will be disturbed only for abuse of discretion." Judge Aldisert observed that appellate courts have been increasingly reluctant to find that a denial of a particular discovery motion was an abuse of discretion in the absence of a showing that the defendant was prejudiced by such denial. He also noted that Rule 16 does not require the prosecution to disclose "all the minutia of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present."

The trial judge in the case at bar was not faced with a situation where an accused requested a copy of his own statement. The application was for an order directing the Government to search its file for assurance that a prospective defense witness could withstand an attack on his credibility when cross-examined by the Government. The extent to which discovery should be permitted in federal criminal cases is admittedly "a complex and controversial question," *Fioravanti, supra,* 412 F.2d p. 410, but Rule 16(b) was never intended to be a vehicle by which a defendant can obtain a guarantee or insurance of the unimpeachability of a defense witness.[13]

We do not have the factual picture presented in Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The critical issue in *Brady* was that the evidence suppressed by the government was exculpatory:

"A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice . . ." pp. 87, 88, 83 S.Ct. p. 1197.

Here no exculpatory evidence was kept from Waller. Randolph's prior statement to the police directly implicated Waller as a participant in the hold-up and named him as the person who carried the stolen money from the bank. The Government did not suppress evidence "favorable to the accused." There is nothing in *Brady* which requires the prosecution to spare the defense the risk of impeachment of its witnesses. The trial judge exercised sound judgment in denying Waller's application.

Lastly, Waller's contention that the denial of his application for discovery reached constitutional dimensions, violating due process and preventing the effective assistance of counsel, is specious. Limiting of pretrial discovery in

---

12. For the history of Rule 16 see Wright 1, F.Pr. & P. § 251, p. 490.

13. Cf. Gollaher v. United States, 419 F. 2d 520, 527 (9th Cir. 1969), cert. den. 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424, which involved a trial court's denial of a defense motion for grand jury testimony of two witnesses. Unlike Waller's attorney, who proceeded to call Randolph and Johnson even though he was denied discovery, the attorney in *Gollaher* decided not to call the two witnesses whose testimony he had been denied. On appeal, he alleged that the denial of discovery deprived him of the defense of "potentially helpful witnesses" because he felt he could not put witnesses on the stand who might be impeached by the grand jury testimony. He claimed the denial of discovery violated due process requirements of Brady v. Maryland, *infra.* The Ninth Circuit, in deciding against appellant, held that *Brady* did not require the prosecution to spare the defense "the risk of impeachment" of its witnesses.

criminal cases is not constitutionally impermissible. DeVita v. Sills, 422 F.2d 1172, 1181 (3d Cir. 1970).

We have examined the complete record and are satisfied that the defendants received a fair and impartial trial.

Affirmed.