OPINION OF THE COURT
FISHER, Circuit Judge.
Shenez Lawrence and Kreig Prosper appeal their respective convictions and sentences for one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 1951, three substantive counts of bank robbery in violation of 18 U.S.C. § 2113(a), and three counts of using or carrying a firearm during and in relation to a bank robbery in violation of 18 U.S.C. § 924(c). We will affirm.
I.
We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.[1]
Lawrence and Prosper, in conjunction with co-conspirator Darnell Turner, conducted three “takeover” bank robberies in 2005. The men fled the Sun National Bank in Matawan, New Jersey on January 12, 2005, with $239,194; the Sun National Bank in Holmdel, New Jersey on August 9, 2005, with $37,000; and the Sovereign Bank in Woodbridge, New Jersey on December 9, 2005, with $27,893.50. In each instance, the three men followed a substantially similar modus operandi.
In'the first two robberies, Lawrence and Prosper entered the banks while armed, threatened the tellers and customers, and acquired cash. Turner served as the getaway vehicle driver and remained outside the bank watching for law enforcement. Lawrence and Prosper donned essentially the same outfits for both robberies, choosing to wear ski masks, gloves, and goggles. In the third robbery, Lawrence, due to injuries suffered from a gunshot wound, acted as the getaway driver while Turner and Prosper entered the bank to conduct the robbery.
Following the third robbery, police officer Steve Killane responded to reports of gun fire at Lawrence’s home. Lawrence was arrested, waived his Miranda rights, and was questioned by police. Upon searching Lawrence’s residence, police recovered, among other things, a significant amount of cash and coins as well as several empty money wrappers. Aware of the bank robbery on that day, the officers contacted the Federal Bureau of Investigation. In the meantime, Turner arrived at Lawrence’s residence and police transported both men to the police station for questioning.
Upon questioning by authorities, Lawrence confessed and proceeded to discuss each robbery in detail. Turner also confessed to his participation in all three robberies; he identified Lawrence and Prosper as his co-conspirators and discussed each robbery in detail.
Following these confessions, authorities began surveillance of Prosper, who had gone on a spending spree following the first robbery, spending thousands of dollars on vehicles, jewelry, and a trip to Atlantic City. Upon searching Prosper’s vehicle, authorities found tens of thousands of dollars and the .38 caliber handgun that Turner carried during the third robbery. *194 Subsequent searches of each suspect’s residence revealed additional currency, money wrappers, and other tools used during the robberies including goggles, ski masks, and gloves.
The grand jury returned a superseding nine-count indictment against Lawrence and Prosper. A jury subsequently convicted Lawrence and Prosper on seven counts: one count of conspiracy to commit bank robbery, three substantive counts of bank robbery, and three counts of using or carrying a firearm during and in relation to a bank robbery.
The District Court denied post-trial motions for judgments of acquittal and for new trials. The Court sentenced Lawrence to 824 months in prison and ordered him to pay $304,087.50 in restitution. The Court sentenced Prosper to 794 months in prison and ordered him to pay $304,087.50 in restitution. Lawrence and Prosper filed them timely notices of appeal on February 28, 2008.
II. Alleged Trial Errors
Both Lawrence and Prosper argue that various errors were made by the District Court during trial. This section will address the errors alleged by each Appellant in turn.
A. Admissibility of Evidence: Lawrence
Lawrence challenges the District Court’s admission of five separate pieces of evidence. Here, we review the first four challenges, properly preserved at trial, under an abuse of discretion standard. Gov’t of the Virgin Islands v. Albert, 241 F.3d 344, 347 (3d Cir.2001). The fifth evidentia-ry challenge, raised for the first time on appeal, is reviewed for plain error only.[2]
Lawrence contends that the District Court erred in admitting evidence (1) that he was shot in the head on October 3, 2005, prior to the Woodbridge robbery; (2) of the .380 caliber semi-automatic handgun recovered from his residence on October 3, 2005; (3) of the fact that he suffered five gunshot wounds to the torso on July 25, 2005, prior to the Holmdel robbery; and (4) of the .38 caliber handgun recovered from his residence in May of 2006. Lawrence asserts that all of this evidence “in-flam[ed] the emotions of the jury and ... depict[ed][him] as someone who had a general propensity for gun violence and criminality.” (App. Lawrence Br. at 9.) We disagree.
Per Rule 404(b) of the Federal Rules of Evidence, “[ejvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.” Fed. R.Evid. 404(b). Lawrence asserts that each of the four admitted pieces of evidence constitutes “other crimes” for purposes of Rule 404(b). This assertion is unpersuasive. We have held that “Rule 404(b) does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense.” United States v. Gibbs, 190 F.3d 188, 217 (3d Cir.1999). Notably, even in instances where the intrinsic act is extremely prejudicial to the defendant, “the court would have no discretion to exclude it because it is proof of the ultimate issue of the case.” Id.
The evidence asserted here is intrinsic to the proof of the three bank robberies and thus admissible. First, the fact *195 that Lawrence suffered a gunshot wound to the head on October 3, 2005, provided the jury with an explanation as to why he assumed a different role in the Wood-bridge robbery and corroborated Turner’s testimony stating as much.
Second, investigators recovered a .380 caliber semi-automatic handgun from Lawrence’s possession on October 3, 2005, which matched descriptions provided by eyewitnesses to the Holmdel robbery and also coiToborated Turner’s testimony.
Third, evidence that Lawrence suffered five gunshot wounds to the chest weeks prior to the Holmdel robbery on July 23, 2005, corroborated Turner’s explanation as to why Lawrence dressed differently for the Holmdel robbery and enabled jurors to more easily identify Lawrence in video footage.
Fourth, Turner testified that Lawrence took possession of the gun used by Prosper in the commission of the Woodbridge robbery. The introduction of the .380 caliber handgun recovered from Lawrence’s residence corroborated this testimony.
For these reasons, the intrinsic nature of the four pieces of aforementioned evidence justified their proper admission at trial. The District Court did not abuse its discretion in this regard.
Fifth, for the first time on appeal, Lawrence argues that the District Court erred in admitting testimony that police responded to his residence after receiving reports of gun fire. Prior to trial, the parties stipulated to a statement that police responded to Lawrence’s residence “on a report of a gunshot being fired.” Detective Killane’s testimony during trial was consistent with this stipulation and elicited no objection from Lawrence.
Lawrence now contends that the admission of this stipulated statement is extremely prejudicial, representing an effort by the Government to inflame the emotions of the jury and depict him as someone who has a general propensity for gun violence. We disagree. The police response to a report of shots fired initiated the discovery of the Woodbridge robbery money. Detective Killane’s testimony carried substantial probative value in this instance as it provided the jury with an understanding of how the conspirators’ robbery scheme began to come undone. The probative value of the stipulated statement outweighed any prejudice to Lawrence and was properly admitted by the District Court.
B. Admissibility of Evidence: Prosper
Prosper argues that the District Court improperly admitted irrelevant and prejudicial testimony that characterized each bank robbery as violent and heinous. He specifically points to (1) F.B.I. Agent Gallagher’s testimony that “take-over robberies are the most serious type of bank robbery;” (2) Stacy Stone’s testimony that she terminated her employment at Mata-wan Bank because “we were robbed and I didn’t feel comfortable working there anymore;” and (3) Stope’s further testimony that she was pregnant at the time of the Matawan robbery.
Prosper contends that the testimony of Gallagher had little probative value and was intended to inflame the jury. Prosper objected to this testimony at trial and made no request for a mistrial. Thus we review the District Court’s decision not to grant a mistrial sua sponte for plain error. See United States v. Pungitore, 910 F.2d 1084, 1126 n. 58 (3d Cir.1990); Gov’t of the Virgin Islands v. Charleswell, 24 F.3d 571, 576-77 (3d Cir.1994). The objection to this testimony was in fact sustained and that line of questioning halted. The jurors viewed video tape of all three robberies and, therefore, were able to come to *196 their own conclusions as to whether the robberies were “serious” in nature. We cannot say that Prosper suffered prejudice significant enough from Gallagher’s statement that the District Court erred in not declaring a mistrial sua sponte.
Prosper also argues that the District Court should have declared a mistrial sua sponte following Stone’s testimony. Prosper did not object to Stone’s testimony at trial, therefore we review the District Court’s decision for plain error. See Charleswell, 24 F.3d at 576-77. Stone’s testimony that she felt uncomfortable working in the bank following the robbery did not result in substantial prejudice to Prosper. Further, her testimony that she was pregnant at the time of the robbery was offered to corroborate Turner’s testimony that Lawrence and Prosper described a pregnant woman as being in the bank at the time of the robbery. As such, the District Court did not plainly err in failing to declare a mistrial sua sponte as a result of this relevant testimony.
C. Request for Mistrial: Lawrence
In response to an inquiry by the Government regarding Lawrence’s initial understanding of his Miranda rights prior to his December 9, 2005 arrest, Detective Killane testified to Lawrence’s “past run-ins with law enforcement.” (DAL at 81.) Upon Lawrence’s objection to the statement, the testimony was stricken from the record and a curative instruction issued. Lawrence subsequently moved for a mistrial on the basis that Killane’s statement and the prior admission of five pieces of disputed evidence constituted cumulative prosecuto-rial misconduct that effectively denied Lawrence a fair trial. The District Court denied the motion and noted that it was “satisfied that the potential prejudicial impact of the testimony ... while unfortunate, is simply unlikely to have any impact on the jury’s verdict in this case.” On appeal, Lawrence contends that the District Court erred in failing to grant a mistrial. We disagree.
In addition to Detective Killane’s testimony, Lawrence points to the five pieces of disputed evidence discussed in Section II.A as grounds for a mistrial. As we have already found these pieces of evidence were properly admitted, our focus here rests solely on the District Court’s decision to strike the disputed testimony and on the validity of the curative instruction in this regard.
We review denials of motions for mistrial for abuse of discretion. United States v. Rivas, 493 F.3d 131, 139 (3d Cir.2007). Notably, “such discretion is construed especially broadly in the context of Rule 403.” United States v. Mathis, 264 F.3d 321, 327 (3d Cir.2001). Here, Lawrence bears the burden of showing that the District Court’s decision to strike the testimony was insufficient to cure any error that may have occurred. United States v. Thornton, 1 F.3d 149, 156 (3d Cir.1993). It is generally presumed that a jury will follow a court’s instruction to disregard inadmissible evidence. See Greer v. Miller, 483 U.S. 756, 766, if. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987).
In this case, it is unlikely that the jury proved unable to follow the District Court’s instructions. The District Court provided a simple and coherent instruction to jurors immediately following Killane’s utterance of the statement. Furthermore, we agree with the District Court that the statement’s inherent lack of specificity in regard to certain past crimes rendered the statement only minimally prejudicial. Consequently, we are satisfied that the District Court did not abuse its discretion in declining to grant a mistrial.
*197 D. Unexplained Wealth
For the first time on appeal, Prosper asserts that the District Court erred by failing to provide the jury with a limiting instruction upon the introduction of evidence concerning his sudden acquisition and expenditure of unexplained wealth following the Matawan robbery. As with the previous unpreserved objections on appeal here, we review this contention for plain error. Lessner, 498 F.3d at 192. We conclude that the District Court did not err by failing to provide a limiting instruction regarding Prosper’s unexplained wealth.
We have stated that “the sudden unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had the opportunity to commit, is competent evidence of guilt and will support ... conviction.” United States v. Chaney, 446 F.2d 571, 575 (3d Cir.1971). In this case, Prosper spent thousands of dollars in the days and weeks following the first bank robbery. Prosper’s acquisition of wealth in the days following the first robbery appears great, especially given the fact that he reported annual income of $8,000 for tax purposes at this time.
Prosper’s characterization of his post-Matawan robbery spending spree as evidence of “other crimes” for purposes of Rule 404(b) is erroneous. The Government offered evidence of Prosper’s ability to make purchases in a way that was not possible for Prosper prior to the Matawan robbery, not evidence of a crime or crimes tending to show Prosper’s bad character or propensity to commit a crime. There exists a great imbalance between the amount of money spent subsequent to the Mata-wan robbery and Prosper’s reported annual income. This imbalance is certainly probative.
III. Alleged Sentencing Errors
Lawrence and Prosper challenge the reasonableness of the sentences imposed by the District Court on several grounds. We review these sentences under an abuse of discretion standard.[3]
At the outset, Lawrence maintains that the District Court abused its discretion by (1) failing to depart from the statutory minimum; and (2) finding that Lawrence and Turner were not similarly situated offenders for purposes of 18 U.S.C. § 3553(a).[4] We disagree.
A district court does not have the authority to depart from statutorily mandated minimum sentences in the absence of (1) a government motion for reduction based upon a defendant’s substantial assistance or (2) a defendant’s compliance with the safety valve in § 3553(f). United States v. Kellum, 356 F.3d 285, 289 (3d Cir.2004). Here, the Government did not move for a departure based on substantial assistance, and the nature of the Lawrence’s § 924(c) conviction for possession of a firearm during and in relation to a robbery prohibits consideration of the *198 safety valve factors. Therefore, the District Court did not abuse its discretion in refusing to depart from the statutorily mandated minimum sentence.
Contrary to Lawrence’s second contention, we have held that the “disparity of sentence between co-defendants does not of itself show abuse of discretion.” United States v. Parker, 462 F.3d 273, 276-77 (3d Cir.2006). The District Court considered Lawrence’s contention that he and Turner were similarly situated for purposes of § 3553(a) and rightfully rejected it. Significant differences between Lawrence and Turner justify the 728-month disparity in their sentences. Most obviously, Turner pleaded guilty to a single count of using or carrying a firearm during and in relation to a bank robbery in violation of 18 U.S.C. § 924(c), a charge which carries a seven-year mandatory minimum consecutive sentence. In contrast, Lawrence pleaded not guilty and was convicted of, among other things, three counts under § 924(c) which, in turn, carry a 57-year mandatory minimum consecutive sentence. Also, Turner pleaded guilty to the charges against him, faced fewer counts of conviction, and cooperated significantly with law enforcement. Given these circumstances, the District Court correctly concluded that Turner and Lawrence were not similarly situated co-defendants for purposes of § 3553(a) application.
Lawrence also contends that the conditions of his pre-trial confinement in Passaic County Jail justified a downward variance in sentencing rather than an imposition of the minimum sentence under the Guidelines. He asserts that the District Court’s failure to grant a downward variance constitutes an abuse of discretion. We disagree and are satisfied, like the District Court, that the conditions in the Passaic County Jail do not warrant an Eighth Amendment or substantive due process inquiry.
Prosper contends that the District Court abused its discretion by imposing a disproportionate sentence without consideration for his insubstantial criminal history and the fact that no injuries stemmed from the robberies. We disagree.
We have held that “although the proportionality principle [of the Eighth Amendment] applies to sentences of terms of years, only an extraordinary case will result in a constitutional violation.” United States v. Walker, 473 F.3d 71, 79 (3d Cir.2007). Contrary to Prosper’s claim, no such extraordinary case of gross dispro-portionality exists here. See id. at 82-83. Prosper’s sentence is not disproportionate from or unreasonable in the face of the gravity of the crimes. Prosper demonstrated a willingness to repeatedly engage in felonious behavior when he committed three consecutive armed robberies spread out over a period of several months. The District Court could reasonably conclude that the crimes Prosper committed were “momentous enough to warrant the deterrence and retribution of lengthy consecutive sentences.” Id.
IV.
For the foregoing reasons, we will affirm the District Court’s judgments.

. The District Court exercised subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

. We review alleged errors without contemporaneous objection for plain error. United States v. Lessner, 498 F.3d 185, 192 (3d Cir. 2007). Plain error occurs when (1) an error is committed; (2) that error is plain; and (3) it affected the defendant's substantial rights. Id.

. We review a sentence by first ensuring that the sentencing court did not commit a serious procedural error. Unites States v. Lopez-Reyes, 589 F.3d 667, 670 (3d Cir.2009). Upon reviewing the procedural validity of a sentence, we next "review the substantive reasonableness of the sentence under an abuse of discretion standard, while keeping in mind that as long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the [18 U.S.C.] § 3553(a) factors, we must affirm.” Id. (internal quotations omitted).

. Appellant Lawrence's brief argues that the District Court failed to "deviate” from the mandated minimum sentence. (App. Lawrence Br. at 33.) The use of the term “deviate” in relation to sentencing is inaccurate. Rather, we will review the District Court's decision not to "depart” or "vary” from the statutory minimum.