NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4906
_____

UNITED STATES OF AMERICA

v.

JENNIFER MCDADE,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 3-06-cr-00029-007)
District Judge: Honorable Kim R. Gibson
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2010

Before:  RENDELL, JORDAN and HARDIMAN, Circuit Judges

(Opinion Filed:  December 22, 2010)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Appellant Jennifer McDade appeals the District Court's orders granting the

government's motion to disqualify her counsel and refusing to give the

Appellant's proposed jury instruction.  We will affirm.

Because we write solely for the benefit of the parties who are familiar with the factual context and procedural history of this case, we will recite only the facts relevant to our analysis. Consesor Cheatham, a/k/a "Skinny," developed a drug distribution network in Johnstown, PA. Jennifer McDade traveled between Johnstown and Allentown to retrieve the drugs for Consesor. Consesor would stay at McDade's house while McDade was away getting the drugs and Consesor kept some of his drugs buried in McDade's backyard. McDade observed Consesor cook up cocaine in her kitchen, obtained heroin for Consesor, and helped Consesor bag marijuana that McDade then sold.

Consesor sold crack and cocaine to some of his customers – including to the government witness, Jeremy Johnson – at McDade's house. Johnson purchased drugs from Consesor at McDade's house at least seven or eight times. Normally, Johnson purchased the drugs on McDade's porch; however, on one occasion, Johnson entered McDade's house in order to exchange a gun for drugs. During the exchange, the gun went off accidentally.

On October 17, 2006, an indictment charged McDade and co-conspirators with conspiracy to distribute and possess fifty grams or more of crack and five hundred grams or more of cocaine. On October 27, 2006, the court appointed Attorney Arthur T. McQuillan to represent McDade. On January 30, 2008, the government moved to disqualify McDade's counsel after learning that McQuillan's law partner, Robert Gleason, had previously represented Johnson. On February 1, 2008, the District Court granted the government's motion to

2

disqualify. Subsequently, the Court denied McDade's motion to reconsider after holding a hearing regarding the disqualification. During the hearing, when asked whether Johnson waived the conflict, Attorney Gleason stated that "he got the impression that it wasn't much of a concern to [the government witness] unless it hurt him." Gleason also testified that he did not believe that his continuing duty of loyalty to a former client lasted forever. The District Court then appointed attorney David Chontos as McDade's new counsel.

At trial, McDade presented evidence that her home had been foreclosed upon and that her car had been repossessed. Based on that, she requested a jury instruction providing that her lack of wealth could be circumstantial evidence that she was not involved in criminal activity. The District Court denied the request.

Following trial, the jury convicted McDade on June 13, 2008, and the Court subsequently denied McDade's Motion for a New Trial. On December 9, 2008, the District Court sentenced McDade, and she filed a timely Notice of Appeal on December 18, 2008. [1]

**Discussion**

I. Disqualification

McDade asserts that the disqualification of her appointed attorney violated her Sixth Amendment right to counsel. She maintains that the District Court's decision was arbitrary because Johnson – the government's witness – whose

---

[1] The District Court had jurisdiction over this criminal case by virtue of 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

testimony gave rise to the potential conflict of interest, never testified at the disqualification hearing. McDade argues the District Court did not thoroughly investigate (1) whether Johnson's testimony would indeed lead to a conflict of interest or (2) whether Johnson would waive the conflict.[2] We disagree.

Pennsylvania Model Rule of Professional Conduct ("MRPC") 1.7 states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . . (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client . . . ."[3] *Id.* Notwithstanding the conflict of interest, a lawyer may continue

---

[2] We review the District Court's ruling on a motion to disqualify defense counsel in two parts. "First, [this Court will] exercise plenary review to determine whether the district court's disqualification was arbitrary – 'the product of a failure to balance proper considerations of judicial administration against the right to counsel.' If we find that the district court's decision was not arbitrary, we then determine whether the court abused its discretion in disqualifying the attorneys." *United States v. Stewart*, 185 F.3d 112, 120 (3d Cir. 1996) (citation omitted).

[3] The Sixth Amendment guarantee of effective assistance of counsel encompasses "the right of adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988) (internal citations omitted). However, this guarantee is not absolute given that the purpose of the Sixth Amendment right to assistance of counsel "'is simply to ensure that criminal defendants receive a fair trial,' and that in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Wheat v. United States*, 486 U.S. 153, 159 (1988) (internal quotation marks and citation omitted). The Supreme Court noted that one way in which this right is limited is that "a defendant [cannot] insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." *Id.*

the representation if "each affected client gives informed consent." *Id.*

Concurrently, Rule 1.10 imputes one attorney's conflicts to all other attorneys in his firm.

Despite the ability of affected clients to waive a concurrent conflict of interest, the Supreme Court has stated that a trial court "[has] an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). Because of this independent interest, district courts "must be allowed substantial latitude in refusing waivers of conflicts of interest" in both instances where actual or potential conflicts exist. *Id.* at 163. Expounding on this topic, we stated,

> Usually, the various rights and duties of the attorney clash when a defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to concurrent or prior representation of . . . a government witness. Such a waiver, however, does not necessarily resolve the matter, for the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. Moreover, to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation, again regardless of any purported waiver. Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal.

*United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991). Pursuant to this reasoning, "[a]s long as the court makes a 'reasoned determination on the basis of

5

a fully prepared record,'" the decision to disqualify counsel is not arbitrary. *United States v. Voight*, 89 F.3d 1050, 1075 (3d Cir. 1996) (citation omitted).

Regardless of McDade's assertion that the District Court had no way of knowing the content of the government witness's testimony, we find that the disqualification was not arbitrary. There was an exchange of pleadings, an affidavit produced by the law partner, a disqualification hearing, and ultimately two opinions written, one addressing the initial Motion to Disqualify and the other following the defendant's Motion to Reconsider. Defendant cites no case in which a court required a government witness to testify in order to determine whether a potential conflict of interest existed. Indeed, the Supreme Court stated in *Wheat*,

> [A] district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand.

486 U.S. at 162-63. Moreover, Attorney Gleason's testimony reveals that Johnson did not readily waive a potential conflict when he indicated his concern that a waiver could hurt him. (A-93.) Finally, Gleason's lack of appreciation for his ongoing and permanent duty of loyalty to former clients further supports the District Court's rational resolution. (A-95.)

6

Even if both affected parties waived the conflict, the district court still has discretion to disregard those waivers given its independent interest in ensuring that the proceedings are fair. *Moscony*, 927 F.2d at 749. After extensive development of the record, it was far from clear that there had been an effective waiver of the conflict affecting McDade's counsel. Accordingly, the District Court properly balanced "considerations of judicial administration against the right to counsel," *Stewart*, 185 F.3d at 120, and did not abuse its discretion in disqualifying McDade's appointed counsel.[4]

II. Jury Instruction

McDade argues that the District Court abused its discretion by not giving McDade's proposed jury instruction that "the defendant's lack of wealth can be circumstantial evidence that there is no involvement in illegal activity." She asserts that the instruction was an adequate statement of the law, the instruction was not substantially covered by other parts of the court's instruction, and the lack of instruction was prejudicial.[5] We disagree.

---

[4] McDade also asserts that the District Court should not have considered the Motion to Disqualify because the government, and not one of the affected parties, raised the issue. However, McDade concedes that this court has previously considered Motions to Disqualify not raised by one of the affected parties. *See United States v. Stewart*, 185 F.3d 112, 120 (3d Cir. 1996) (citation omitted). In this case, the District Court reserved its ruling on the Motion to Reconsider until after hearing testimony that both 1) Johnson was concerned that a waiver might hurt him and 2) Attorney Gleason apparently did not understand his duty of loyalty to former clients lasted forever. (A-93-95.)

[5] "[This Court] exercise[s] plenary review to determine whether jury instructions misstated the applicable law, but in the absence of a misstatement we

7

"The district court has wide discretion in charging the jury. We will find that the court erred in refusing to give an instruction only if the instruction was correct, not substantially covered by other instructions, and was so important that the omission of the instruction prejudiced the defendant." *United States v. Smith*, 789 F.2d 196, 204 (3d Cir. 1986); *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999) (same). The District Court determined that the instruction was not necessarily correct given that "[a]lthough an unexplained acquisition of wealth establishes the receipt of income through some unknown source, the lack of wealth can be explained not only by a lack of income, but also by an unwise use of that income."[6] (A-22 n.1.) Additionally, the Court determined that the lack of this instruction did not prejudice McDade because it had given the general circumstantial evidence instruction. (*Id.*) The Court's circumstantial evidence instruction adequately informed the jury concerning their ability to determine that McDade was not guilty because she had arguably not received any monetary fruits from the drug conspiracy. Moreover, neither party cites any case law in this Circuit that addresses the propriety of giving this instruction. Accordingly, we

---

review for an abuse of discretion." *United States v. Hoffecker*, 530 F.3d 137, 173-74 (3d Cir. 2008) (citation omitted).

[6] Indeed, McDade requested that the district court give the inverse of the common jury charge that "the sudden unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had an opportunity to commit, is competent evidence of guilt and will support conviction." *United States v. Chaney*, 446 F.2d 571, 575 (3d Cir. 1971).

will find that the District Court did not abuse its discretion in refusing to give McDade's proposed instruction.

## Conclusion

For the foregoing reasons, we will affirm the District Court's decisions on all grounds.