

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-2007

# USA v. Walker

Precedential or Non-Precedential: Precedential

Docket No. 04-4405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Walker" (2007). *2007 Decisions.* Paper 1704.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1704

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4405
_____

UNITED STATES OF AMERICA

v.

MICHAEL WALKER,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 03-cr-00093)
District Judge:  The Honorable Edwin M. Kosik
_____

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2006

BEFORE: FUENTES and VAN ANTWERPEN, Circuit Judges,
and
PADOVA, District Judge.[*]

(Opinion filed: January 16, 2007)

_____

[*]Honorable John R. Padova of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

Enid W. Harris
Harris & Van Jura
26 Pierce Street
Kingston, PA 18704

      Counsel for Appellant

Thomas A. Marino
 United States Attorney
John C. Gurganus, Jr.
 Assistant United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18501

      Counsel for Appellee

_____

OPINION OF THE COURT
_____

PADOVA, <u>District</u> <u>Judge</u>

Michael Walker appeals his sentence from a conviction in the United States District Court for the Middle District of Pennsylvania for numerous firearms, robbery and drug charges. At issue is whether the 55-year consecutive mandatory minimum portion of his sentence on the firearms charges violates the Fifth and Eighth Amendments to the Constitution. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We will affirm.

I.

Superceding Indictment No. 03-93 charged Walker with offenses arising from the armed robbery of the Mr. Z's Food Mart in Hawley, Pennsylvania on October 26, 2001; the armed robbery of the Peoples National Bank in Nicholson, Pennsylvania on November 30, 2001; and the sale of cocaine, cocaine base ("crack"), and marijuana in Scranton, Pennsylvania between October 2001 and September 28, 2002. Walker was charged with

2

two counts in connection with the Mr. Z's robbery: interference with commerce by robbery, in violation of 18 U.S.C. § 1951 (Count I) and using and possessing a short-barreled Harrington and Richardson 12 gauge shotgun during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count II). On October 26, 2001, Walker robbed two employees of Mr. Z's who were on their way to make a night deposit at a bank in the same strip mall. Walker demanded the deposit bag from the employees, told the employees to run, and fired a shot from his short-barreled shotgun. He made off with $9,628.21 in cash and $14,698.87 in checks, receipts and coupons.

The Superceding Indictment also charged Walker with two counts in connection with the Peoples National Bank robbery: armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count III) and using, carrying and brandishing a short-barreled Harrington and Richardson 12 gauge shotgun and a silver Bryco .380 automatic handgun during and in relation to the crime of armed bank robbery, in violation of 18 U.S.C. § 924(c) (Count IV). On November 30, 2001, Walker used both the sawed-off shotgun and the handgun to rob the Peoples National Bank. He pointed the shotgun in the faces of employees of the bank, and threw a 92-year-old man to the ground when the man did not respond to his commands. He obtained $8,863 from the bank robbery. The Superceding Indictment also charged Walker with one count of possession of an unregistered short-barreled Harrington and Richardson 12 gauge shotgun between October 2001 and February 2002, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 (Count V).

In addition to the robbery and firearms charges, the Superceding Indictment charged Walker with four counts related to his sales of cocaine, cocaine base ("crack"), and marijuana from his home in Scranton, Pennsylvania: conspiracy to distribute and possess with intent to distribute in excess of 50 grams of cocaine base ("crack"), cocaine, and marijuana between October 2001 and September 28, 2002, in violation of 21 U.S.C. § 846 (Count VI); distribution of cocaine base ("crack") and aiding and abetting the distribution of cocaine base ("crack") between October 2001 and September 27, 2002, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count VII); possession with intent to distribute in

3

excess of five grams of cocaine base ("crack") and aiding and abetting the possession with intent to distribute in excess of five grams of cocaine base ("crack") on September 28, 2002, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count VIII); and possession of a Jennings .9mm pistol during and in relation to a drug trafficking offense on September 28, 2002, in violation of 18 U.S.C. § 924(c) (Count IX). In connection with these drug trafficking offenses, Walker distributed and possessed with intent to distribute 100 grams of cocaine base and 1 kilogram of cocaine and supervised the distribution of these drugs by another individual.

The drug trafficking charges (Counts VI - IX) were severed from the armed robbery and armed bank robbery charges (Counts I - V) for trial. On March 12, 2004, Walker was convicted by a jury of Counts VI - IX. On September 29, 2004, Walker was convicted by a jury of Counts I - V.

Walker was sentenced on June 16, 2005. He objected to the pre-sentence report on the grounds that the consecutive mandatory minimum sentences totaling 55 years of imprisonment for the three violations of 18 U.S.C. § 924(c), Counts II, IV and IX, were unconstitutional.[1] The District Court overruled his objections and sentenced him to a term of imprisonment of 65 years, consisting of

---

[1]Title 18, United States Code, Section 924(c) provides that the mandatory minimum term of imprisonment for possession of a firearm during and in relation to a crime of violence or a drug trafficking offense is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the firearm is a short-barreled shotgun, the mandatory minimum term of imprisonment is ten years. 18 U.S.C. § 924(c)(1)(B)(i). If the defendant is being sentenced for a second or subsequent conviction of Section 924(c), the mandatory minimum term of imprisonment is 25 years. 18 U.S.C. § 924(c)(1)(C)(i). Section 924(c)(1)(C)(i) applies even if the second or subsequent conviction is for a count charged in the same indictment as the initial violation of Section 924(c). See Deal v. United States, 508 U.S. 129, 131-134 (1993). Consequently, the pre-sentence report recommended that Counts II and IV, relating to Walker's use of the short-barreled shotgun, be sentenced as second or subsequent offenses.

4

120 months on each of Counts I, III, V, VI, VII, and VIII, to be served concurrently;[2] and to mandatory minimum terms of imprisonment of five years on Count IX, to be served consecutively to the term of imprisonment imposed for Counts I, III, V, VI, VII and VIII; and 25 years on each of Counts II and IV, to be served consecutively to each other and to the terms imposed for Counts I, III, V, VI, VII, VIII, and IX. The District Court also sentenced Walker to a total term of supervised release of five years, a special assessment of $900, and restitution in the amount of $24,004.72, to be paid to Mr. Z's Food Mart and to Peoples National Bank.[3]

## II.

Walker asks us to find that his consecutive mandatory minimum sentence of 55 years of imprisonment pursuant to 18 U.S.C. § 924(c)(1) is unconstitutional because it violates the Due Process Clause of the Fifth Amendment and the doctrine of separation of powers; constitutes an irrational classification in violation of the equal protection principles of the Fifth Amendment; inflicts cruel and unusual punishment in violation of the Eighth Amendment; and was not appropriate under established rules of statutory construction. The standard of review for Walker's constitutional challenge to his mandatory minimum sentence is plenary, as is his statutory construction challenge. See United States v. Randolph, 364 F.3d 118, 121 (3d Cir. 2004) ("We apply a plenary standard of review to issues of statutory interpretation,

---

[2]Walker's sentence for these offenses is less than the advisory Guidelines sentencing range. Walker had a total offense level of 34 for Counts I, III, V, VI, VII and VIII and a criminal history category of I. The advisory Guidelines sentencing range for a total offense level of 34 and a criminal history category of I is 151-188 months. See U.S.S.G. Part 5A.

[3]Walker was ordered to pay restitution in the amount of $18,541.72 to Mr. Z's Food Mart and $5,463.00 to Peoples National Bank. Walker had paid James Harris, who drove the get-away car from the Peoples National Bank robbery, $3,400 from the proceeds of that robbery. Harris, who was also convicted in the robbery, was ordered to pay restitution to Peoples National Bank in the amount of $3,400 as part of his sentence.

5

and to questions regarding a statute's constitutionality.") (citations omitted).

III.

Walker contends that the mandatory consecutive sentencing scheme of Section 924(c)(1) violates the Due Process Clause of the Fifth Amendment and the doctrine of separation of powers because it limits the court's discretion at sentencing and turns that discretion over to the executive branch. See Mistretta v. United States, 488 U.S. 361, 390-91 (1989) (stating that responsibility for sentencing has traditionally been shared by the three branches of government). He notes that, when Section 924(c)(1) was initially passed into law in 1968, it provided for mandatory terms of imprisonment of 2 to 25 years for second or subsequent offenders, thereby giving judges considerable discretion in sentencing second or subsequent offenders. See Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1223 (1968); Simpson v. United States, 435 U.S. 6, 7-8 (1978). Walker maintains that Congress, in amending the statute to eliminate that discretion, created an unconstitutional mandatory sentencing scheme. He also argues that the mandatory consecutive sentencing scheme of Section 924(c)(1) violates the Due Process Clause because it prevents the courts from conducting individualized sentencing. He further asserts that the 55-year increase in his sentence of imprisonment attributable solely to his Section 924(c)(1) convictions cannot be consistent with due process without an individualized determination of whether his conduct and criminal history justify such a sentence.

This Court has squarely addressed and rejected the argument that mandatory sentences violate the doctrine of separation of powers and the Due Process Clause. See United States v. MacEwan, 445 F.3d 237 (3d Cir.), cert. denied, 127 S. Ct. 208 (2006); see also United States v. Frank, 864 F.2d 992, 1010 (3d Cir. 1988). Regarding the separation of powers argument, MacEwan noted that the Supreme Court "has specifically held that 'Congress has the power to define criminal punishments without giving the courts any sentencing discretion.'" Id. at 251 (quoting Chapman v. United States, 500 U.S. 453, 467 (1991)). The MacEwan Court explicitly considered whether mandatory sentencing schemes vest too much power in the prosecutor and

6

concluded that "'a legislature can exercise its right to limit judicial discretion in sentencing by bestowing on prosecutors the right to make decisions that may curtail judicial discretion.'" Id. at 252 (quoting Ehrsam v. Rubenstein, 917 F.2d 764, 767 (3d Cir. 1990)). McEwan also recognized that this Court has repeatedly rejected due process challenges to mandatory sentencing schemes on the ground that there is no due process right to individualized sentencing. See id. (citing Ehrsam, 917 F.2d at 766); Frank, 864 F.2d at 1010. Accordingly, the 55-year mandatory consecutive sentence required by Section 924(c)(1) does not violate the separation of powers doctrine or the Due Process Clause of the Fifth Amendment.

IV.

Walker also argues that his 55-year mandatory consecutive sentence for violations of Section 924(c)(1) is irrational when compared with the punishment for other, more serious federal crimes and, therefore, violates the equal protection principles of the Due Process Clause. See Mathews v. De Castro, 429 U.S. 181, 182 n.1 (1976) ("It is well settled that the Fifth Amendment's Due Process Clause encompasses equal protection principles." (citing Weinberger v. Salfi, 422 U.S. 749, 768-770 (1975))). The Supreme Court has explained that "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319-20 (1993) (internal quotations and citations omitted).

Under rational basis review, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. at 320 (internal quotation and citations omitted). Consequently, the principles of equal protection are satisfied "so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the

7

distinction arbitrary or irrational." Fitzgerald v. Racing Ass'n of Central Iowa, 539 U.S. 103, 107 , (2003) (internal quotation omitted).

Walker argues that Section 924(c)(1) is intended to punish the potential for violence created by the carrying of a firearm in the prohibited circumstances and that it is irrational to punish the potential for violence more harshly than actual violent crime. He asks us to compare the sentence he received in this case, for three violations of Section 924(c), with the sentences recommended by the Sentencing Guidelines for other, actually violent, crimes such as an aircraft hijacking, a terrorist bombing, and a racially motivated assault with attempt to kill. Assuming that Walker's hypothetical violent criminals had no prior adult criminal convictions, his airline hijacker would have a total offense level of 38, a criminal history category of I, and an advisory Guidelines sentencing range of 235-293 months pursuant to U.S.S.G. § 2A5.1 and Part 5A; his terrorist bomber would have a total offense level of 36 and a criminal history category of VI, and face an advisory Guidelines sentencing range of 324-405 months pursuant to U.S.S.G. § 2K1.4(a), § 3A1.4(a) and (b) and Part 5A; and his racist attempted murderer would have a total offense level of 40, a criminal history category of I, and an advisory Guidelines sentencing range of 292-365 months pursuant to U.S.S.G. § 2A2.1(a), § 2A2.1b(a)(A), § 3A1.1(a), and Part 5A. Walker's hypotheticals do not take into account the fact that a defendant who commits three such violent crimes could be subject to a term of imprisonment at least as long as the one imposed on Walker. Thus, Section 924(c)(1) did not irrationally punish the potential for violence posed by Walker's use of a firearm in connection with two crimes of violence and one drug trafficking crime more than he might have been punished for "actual" violent crime.

Walker also argues that Section 924(c)(1) is irrational because it fails to differentiate between a first time offender who commits more than one Section 924(c)(1) offense and a recidivist. Consequently, he contends that he is being punished as a recidivist even though he has not "failed to learn his lessons from the initial punishment" and committed a repeat offense. The Supreme Court has rejected the contention that the second or consecutive sentencing provision of Section 924(c)(1)(C)(i) could only

8

rationally apply to "recidivists." See Deal v. United States, 508 U.S. 129 (1993) (holding that Congress intended that the mandatory terms of 20 years each for second and subsequent offenses required by Section 924(c)(1)(C)(i) be imposed even if all of the offenses were charged in the same indictment). In rejecting the contention that application of Section 924(c)(1)(C)(i) to an offender who was charged with two or more violations of Section 924(c) in the same indictment defied common sense, the Supreme Court stated :

> We choose to follow the language of the statute, which gives no indication that punishment of those who fail to learn the "lesson" of prior conviction or of prior punishment is the sole purpose of § 924(c)(1), to the exclusion of other penal goals such as taking repeat offenders off the streets for especially long periods, or simply visiting society's retribution upon repeat offenders more severely. We do not agree with the dissent's suggestion that these goals defy "common sense." It seems to us eminently sensible to punish the second murder, for example, with life in prison rather than a term of years-whether or not conviction of the first murder (or completion of the sentence for the first murder) has yet occurred.

Deal, 508 U.S. at 136-37 (footnote omitted). Moreover, Walker is not a "recidivist" only because the prosecutor in his case chose to indict him on all three violations of Section 924(c)(1) in one multi-count indictment, instead of charging the three separate violations of Section 924(c)(1) in three separate indictments. Section 924(c)(1) did not, therefore, irrationally fail to differentiate between a first-time offender and a recidivist in this case.

The Government urges us to conclude that Congress's

9

decision to classify and punish repeat violators of Section 924(c)(1) more harshly than one-time offenders is rationally related to the legitimate governmental interest in discouraging the use of firearms in violent crimes and drug trafficking crimes and in punishing more harshly criminals who repeatedly use deadly weapons. Congress's "overriding purpose" in passing Section 924(c) "was to combat the increasing use of guns to commit federal felonies." Simpson, 435 U.S. at 10 (emphasis omitted). The chief sponsor of this provision explained that "the provision seeks 'to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'" Muscarello v. United States, 524 U.S. 125, 132 (1998) (citing 114 Cong. Rec. 22231 (1968) (Rep. Poff)); Busic v. United States, 446 U.S. 398, 405 (1980); Simpson, 435 U.S. at 13-14; 114 Cong. Rec. 22243-22244, 22236).

Section 924(c) has been amended several times. In the Comprehensive Crime Control Act of 1984, Congress "eliminat[ed] the range of permissible penalties, set[] a mandatory prison term of five years," for use or carrying of a firearm during or in relation to a crime of violence, "and specif[ied] that that term was to be added on top of the prison term related to the underlying 'crime of violence,' including statutory sentences that imposed certain other weapons-related enhancements." Castillo v. United States, 530 U.S. 120, 129 (2000) (citation omitted); see also Comprehensive Crime Control Act, Pub. L. 98-473, § 1005(a), 98 Stat. 2138 (1984). Congress also imposed a mandatory term of ten years of imprisonment for a second or subsequent offense in the same Act. Comprehensive Crime Control Act, Pub. L. 98-473, § 1005(a), 98 Stat. 2138 (1984). In 1986, Congress amended Section 924(c)(1) to require mandatory penalties when a firearm is used or carried in connection with drug trafficking and to increase the mandatory penalty for certain types of weapons. Firearms Owner's Protection Act, Pub. L. No. 99-308, § 104(a)(2), 100 Stat. 456-57 (1986). The mandatory penalties of Section 924(c)(1) were extended to the use of firearms in connection with drug trafficking crimes in order to "combat the 'dangerous combination' of 'drugs and guns.'" Muscarello, 524 U.S. at 132 (quoting Smith v. United States, 508 U.S. 223, 240 (1993)). In 1988, Congress increased the mandatory term of imprisonment for a second or subsequent conviction under Section 924(c)(1) from ten years to twenty years. Anti-Drug Abuse Act of 1988, Pub. L. 100-690, § 6460, 102 Stat. 4373 (1988). In

1998, Congress again amended Section 924(c)(1) to require the present mandatory minimum sentence of 25 years for a second or subsequent conviction. An Act to Throttle Criminal Use of Guns, Pub. L. No. 105-386, § 1(a)(1), 112 Stat. 3469 (1998).

This Court has previously recognized that, in imposing the mandatory consecutive sentences for second or subsequent offenders in Section 924(c)(1), "[i]t is likely that Congress meant . . . to protect our communities from violent criminals who repeatedly demonstrate a willingness to employ deadly weapons by punishing them more harshly." United States v. Couch, 291 F.3d 251, 255 (3d Cir. 2002). The United States Court of Appeals for the Fourth Circuit has similarly noted that the significantly higher mandatory penalties for second and subsequent offenses are intended to "deter the use of firearms in the commission of crimes and to increase the cost of committing a second offense. The mandatory aspect of the sentences and the enhancement provisions in connection with a second offense reveal the strong policy of encouraging would-be criminals to leave their handguns at home." United States v. Raynor, 939 F.2d 191, 194 (4th Cir. 1991) (citing United States v. Rawlings, 821 F.2d 1543, 1546 (11th Cir. 1987)). We conclude, accordingly, that Congress had a rational basis for treating second or subsequent offenses under Section 924(c)(1) more harshly than first offenses and for imposing severe mandatory punishments for such offenses. See Muscarello, 524 U.S. at 132; Couch, 291 F.3d at 255; Raynor, 939 F.2d at 194. Walker's 55-year mandatory consecutive sentence for his three violations of Section 924(c)(1) does not, therefore, violate the equal protection principles of the Fifth Amendment.

V.

Walker further argues that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment because (1) it is grossly disproportionate to the offenses that he committed and (2) it is contrary to the evolving standards of decency that are the hallmark of our civilized society. The Supreme Court has long recognized that "[t]he Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" See Ewing v. California, 538 U.S. 11, 20 (2003) (rejecting the

argument made by Ewing, who was sentenced to a prison term of 25 years to life under California's three strikes law after he was convicted of stealing three golf clubs, that California's three strikes law violated the Eighth Amendment) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-997 (1991) (Kennedy, J., concurring in part and concurring in judgment)); see also Solem v. Helm, 463 U.S. 277, 286 (1983) ("[T]he constitutional principle of proportionality has been recognized explicitly in this Court for almost a century."). Although the proportionality principle applies to sentences for terms of years, only an extraordinary case will result in a constitutional violation. Lockyer v. Andrade, 538 U.S. 63, 72, 77 (2003).[4]

In Rummel v. Estelle, 445 U.S. 263 (1980), the Supreme Court held that the mandatory life sentence imposed on Rummel for his third felony, "obtaining $120.75 by false pretenses," did not violate the Eighth Amendment. Id. at 266, 284-285. The Rummel Court explained that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." Id. at 271 (citations omitted). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Id. at 272. In Hutto v. Davis, 454 U.S. 370 (1982) (per curiam), the Supreme Court assessed its decision in Rummel and determined that "Rummel stands for the proposition that federal courts should be 'reluctant to review legislatively mandated terms of

---

[4]In Lockyer, the Supreme Court found that the decision of the California Supreme Court, that a three strikes law sentence of two consecutive terms of 25 years to life imprisonment for a state prisoner who had been convicted of two petty theft offenses did not violate the Eighth Amendment's proportionality principle, was not an unreasonable application of clearly established precedent. Lockyer, 538 U.S. at 69-70. Lockyer was convicted of two offenses of stealing videotapes from a Kmart store. Id. at 66. The five videotapes stolen in the first offense had a total value of $84.70, the four videotapes stolen in the second offense had a total value of $68.84. Id.

imprisonment.'"[5] Id. at 374 (quoting Rummel, 445 U.S. at 272, 274).

One of those exceedingly rare successful cases was Solem v. Helm, 463 U.S. 277 (1983), in which the Supreme Court applied the proportionality principle in finding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100." Solem, 463 U.S. at 281. Helm, who had six previous nonviolent felony convictions, none of which was a crime against a person, and all of which involved alcohol, was convicted of "uttering a 'no account' check for $100" after a night of drinking. Id. at 279-80, 281. Although the maximum penalty for uttering a "no account" check was five years imprisonment and a $5000 fine, Helm was, because of his previous felony convictions, subject to sentencing under South Dakota's recidivist statute, which required enhanced sentencing up to a maximum of life imprisonment without parole and a $25,000 fine. Id. at 281. He was, accordingly, sentenced to life imprisonment. Id. at 282. The Solem Court utilized the following three factors in analyzing whether his sentence was so disproportionate that it violated the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty;" (2) "the sentences imposed on other criminals in the same jurisdiction;" and (3) "the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292. The Court determined that Helm "received the penultimate sentence for relatively minor criminal conduct;" that the sentence he received was more severe "than other criminals in the State who

---

[5]Hutto had challenged his forty-year state sentence for possession of nine ounces of marijuana and drug paraphernalia and selling marijuana as cruel and unusual. Hutto, 454 U.S. at 370-71. The district court granted Hutto's petition for writ of habeas corpus on the grounds that his sentence was "so grossly out of proportion to the severity of the crimes as to constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." Id. at 371. The United States Court of Appeals for the Fourth Circuit affirmed the decision of the district court. Id. at 372. The Supreme Court reversed because the Fourth Circuit failed to follow Rummel. Id.

13

have committed more serious crimes," such as treason, first degree manslaughter, first degree arson, kidnapping, and attempted murder; and that he had "been treated more harshly than he would have been in any other jurisdiction, with the possible exception of a single State."  Id. at 298, 300.  The Court concluded that Helm's sentence was "significantly disproportionate to his crime, and [was] therefore prohibited by the Eighth Amendment."  Id. at 300.

In Harmelin v. Michigan, 501 U.S. 957 (1991), the Supreme Court rejected a proportionality challenge to the mandatory sentence of life without possibility of parole imposed on a first-time offender convicted of possession of 672 grams of cocaine.  Id. at 961.  Justice Scalia, writing for a majority of the Court, rejected Harmelin's argument that severe mandatory penalties were cruel and unusual in violation of the Eighth Amendment.  Id. at 994-95 (noting that "mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history").  In his concurring opinion, Justice Kennedy suggested that the following principles inform the Court's proportionality analysis: "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors."  Id. at 1001.  He further suggested that these principles "inform the final" principle that the "Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. (citing Solem, 463 U.S. at 288, 303; Weems, 217 U.S. at 371; Coker v. Georgia, 433 U.S. 584, 592 (1977); and Rummel, 445 U.S. at 271). Justice Kennedy also explained that the courts need not always engage in an analysis of the second and third Solem factors when conducting a proportionality review: "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  Id. at 1005.   In Ewing, the Supreme Court adopted the use of these principles in the proportionality analysis. See Ewing,  454 U.S. at 23-24 ("The proportionality principles in our cases distilled in Justice Kennedy's concurrence guide our application of the Eighth Amendment . . . .").

Walker argues that his sentence is grossly disproportionate to his offense in violation of the Eighth Amendment in accordance with the proportionality factors set forth in Solem. He contends that the first factor is satisfied because his Guidelines sentence for the drug and robbery convictions is sufficient to punish all of his crimes and that the involvement of guns in those crimes does not warrant increasing his sentence by 55 years of imprisonment. He further argues that a comparison of his sentence and the sentences for other serious federal crimes shows that his sentence is extreme and satisfies the second factor. He also maintains that it is common knowledge that the 55-year sentence which he received for his violations of Section 924(c)(1) is far more severe than he would have received in other jurisdictions, satisfying the third factor.

This Court recently examined the application of the Solem factors in light of Harmelin and Ewing. See MacEwan, 445 F.3d at 247-50 (rejecting MacEwan's proportionality challenge to his fifteen-year mandatory minimum sentence for his second conviction for downloading child pornography over the internet). The MacEwan Court explained that, in using the Solem factors to evaluate proportionality challenges to sentences under the Eighth Amendment, courts "'should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.'" MacEwan, 445 F.3d at 247 (quoting United States v. Rosenberg, 806 F.2d 1169, 1175 (3d Cir. 1986)). The MacEwan Court also noted that the "principle of substantial deference therefore 'restrains us from an extended analysis of proportionality save in rare cases.'" Id. at 247-48 (quoting Rosenberg, 806 F.2d at 1175). Therefore, "the first proportionality factor acts as a gateway or threshold. If the defendant fails to show a gross imbalance between the crime and the sentence, our analysis is at an end." Id. at 248. Consequently, this Court must "focus upon whether [Walker's] is 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" Id. (quoting Ewing, 538 U.S. at 30). If we cannot infer gross disproportionality, we are "not bound to conduct any 'comparative analysis within and between jurisdictions' as required by Solem's second and third factors." Id. (quoting Ewing, 538 U.S. at 23). We also note, in considering the first factor, that "the Eighth Amendment does not demand strict proportionality

15

between the crime and the sentence; rather, it forbids only those sentences that are 'grossly disproportionate' to the crime." Id. (quoting Ewing, 538 U.S. at 23).

The Government argues that Walker's sentence is not grossly disproportionate to his crime because, as is confirmed by the evidence admitted at his trials, Walker is a violent criminal who repeatedly committed serious crimes and armed himself with firearms as a tool of his drug trade and to facilitate his robberies. He used a short-barreled shotgun to commit the Mr. Z's Food Mart robbery and discharged the shotgun during that robbery. He used the same shotgun, as well as a pistol, during the Peoples National Bank robbery, leveling the shotgun at tellers' heads and throwing a 92-year-old man to the ground. He later used a semi-automatic pistol in connection with drug dealing. The Government maintains that, in light of Walker's egregious, repeated conduct, the consecutive mandatory minimum sentences totaling 55 years imposed for his three violations of Section 924(c)(1) are not grossly disproportionate to his crimes.

We are guided in our analysis of Walker's proportionality challenge to his 55-year mandatory consecutive sentence by the requirement that we "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." See MacEwan, 445 F.3d at 247. Congress's purpose in amending Section 924(c)(1) to require mandatory consecutive sentences was "to . . . protect society by incapacitating those criminals who demonstrate a willingness to repeatedly engage in serious felonies while in possession of firearms, . . . to deter criminals from possessing firearms during the course of certain felonies," United States v. Angelos, 433 F.3d 738, 751 (10th Cir. 2006) (citations omitted), and "to protect our communities from violent criminals who repeatedly demonstrate a willingness to employ deadly weapons by punishing them more harshly." Couch, 291 F.3d at 255. Thus, we find that "Congress 'could with reason conclude that the threat posed to the individual and society' by possessing firearms in connection with serious felonies," such as the armed robberies and drug-trafficking crimes Walker committed, is "'momentous enough to warrant the deterrence and retribution' of lengthy consecutive sentences, such as those imposed on [Walker] in this case."

Angelos, 433 F.3d at 751 (quoting Harmelin, 501 U.S. at 1003). Moreover, Walker's crimes were at least as serious as those committed by Lockyer, Rummel, Hutto, and Ewing, whose proportionality challenges were rejected by the Supreme Court. Consequently, we find that the harshness of Walker's 55-year mandatory consecutive sentence, balanced against the gravity of his offenses, does not violate the proportionality principle of the Eighth Amendment. See Solem, 463 U.S. at 290-91. Having found that Walker's is not "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality,'" our analysis is at an end. MacEwan, 445 F.3d at 248 (quoting Ewing, 538 U.S. at 30) . We conclude, therefore, that Walker's sentence is not grossly disproportionate from the gravity of his crimes in violation of the Eighth Amendment.[6]

_____

[6]The other Courts of Appeals that have considered whether the mandatory consecutive sentencing scheme of Section 924(c)(1) violates the proportionality principle of the Eighth Amendment have concluded that it does not. See United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) (rejecting an Eighth Amendment proportionality challenge to a prison term of 240 years plus a consecutive term of life imprisonment for offenses related to the 1993 bombing of the World Trade Center, which included two 30-year consecutive mandatory terms of imprisonment for violations of 18 U.S.C. § 924(c)(1)(A)(ii))); United States v. Khan, 461 F.3d 477, 494-95 (4th Cir. 2006) (rejecting Eighth Amendment challenge to sentences of 120 months, 300 months, and life imprisonment imposed pursuant to the "count-stacking" provisions of § 924(c)(1) as the Supreme Court has upheld severe mandatory penalties and has never held that "'a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment.'" (citing Harmelin, 501 U.S. at 994 and quoting United States v. Beverly, 369 F.3d 516, 537 (6th Cir. 2004))); United States v. Beverly, 369 F.3d 516, 536-37 (6th Cir. 2004) (rejecting a proportionality challenge to a sentence of 71½ years, most of which was mandated by violations of § 924(c)(1), even though the defendant asserting the challenge had never before been convicted of a felony); United States v. Arrington, 159 F.3d 1069,

Walker also asks us to consider whether our nation's evolving standards of decency require us to find that his sentence constitutes cruel and unusual punishment. Walker relies on the recommendation of the 2004 ABA Justice Kennedy Commission that federal and state governments repeal mandatory minimum sentences. American Bar Association Justice Kennedy Commission, Reports with Recommendations to the ABA House of Delegates, dated August, 2004, at 9, available at http://www.abanet.org/crimjust/kennedy/Justice KennedyCommissionReportsFinal.pdf. Walker also suggests that the imposition of a 55-year prison term on a first-time offender cannot encompass rehabilitation but, rather, denies both the offender and the community a second chance.

We find that, rather than violate our evolving standards of decency, Walker's mandatory consecutive sentences represent

---

1073 (7th Cir. 1998) ( finding that the Eighth Amendment did not prohibit a 65-year mandatory consecutive sentence imposed for four violations of Section 924(c)(1), "[g]iven the limited nature of Eighth Amendment proportionality review, and precedents upholding life sentences for persons who have committed lesser crimes . . . ." (citing United States v. Farmer, 73 F.3d 836 (8th Cir. 1996) and United States v. Dittrich, 100 F.3d 84, 87 (8th Cir. 1996))); United States v. Campbell, No. 04-3082, 128 Fed. App. 558, 560 (8th Cir. Apr. 25, 2005) (non-precedential) (finding that Campbell's thirty year mandatory minimum sentence, although very harsh, did not violate the Eighth Amendment (citing United States v. Farmer, 73 F.3d 836, 840 (8th Cir. 1996) and Harmelin, 501 U.S. 957)); United States v. Hungerford, 465 F.3d 1113, 1118 (9th Cir. 2006) (rejecting argument that the Eighth Amendment precluded a 155-year consecutive mandatory minimum sentence imposed for seven violations of Section 924(c)(1) charged in the same indictment); United States v. Parker, 241 F.3d 1114, 1117-18 (9th Cir. 2001) (rejecting Eighth Amendment challenge to a 888-month sentence that included 780 months for four violations of Section 924(c)(1) charged in the same indictment); and Angelos, 433 F.3d at 751 (denying a proportionality challenge to a 55-year mandatory consecutive sentence for three violations of Section 924(c)(1) which had been charged in the same indictment).

18

Congress's attempt to address the serious societal problem of the use of firearms in connection with violent crimes and in connection with drug trafficking. See Muscarello, 524 U.S. at 132; Simpson, 435 U.S. at 10; Deal, 508 U.S. at 136-37; Khan, 461 F.3d at 495; Angelos, 433 F.3d at 751; Couch, 291 F.3d at 255; and Raynor, 939 F.2d at 194. We conclude, accordingly, that Walker's 55-year consecutive mandatory minimum sentence for three violations of Section 924(c)(1) does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.

## VI.

Walker also argues that his harsh mandatory consecutive sentence could have been avoided had the District Court utilized the appropriate principles of statutory construction. He contends that the minimum term of 25 years of imprisonment for a second or subsequent felony conviction for use of a firearm in connection with a crime of violence or a drug trafficking crime mandated by Section 924(c)(1)(C)(i) directly conflicts with the controlling mandate of 18 U.S.C. § 3553(a) that a court shall "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."[7]  18 U.S.C. § 3553(a).

---

[7]Those purposes are:
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Walker asserts that the district court could have avoided imposing his draconian mandatory sentence by imposing a sentence which met the sentencing goals of 18 U.S.C. § 3553(a), rather than the severe consecutive mandatory minimum sentences required by Section 924(c)(1). He maintains that it is an established rule of statutory construction that criminal laws are to be strictly construed in favor of the defendant and that the district court should have chosen "the construction yielding the shorter sentence by resting on the venerable rule of lenity, rooted in 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'" United States v. R.L.C., 503 U.S. 291, 305 (1992) (quoting United States v. Bass, 404 U.S. 336, 347-48 (1971)). However, the Supreme Court also stated in R.L.C. that "'we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute.'" Id. (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)) (footnote omitted).

We perceive no doubt about the intended scope of Section 924(c)(1). The Supreme Court has explained that this statute requires the imposition of the mandatory consecutive second or subsequent offense penalties of Section 924(c)(1)(C)(i) to a defendant, such as Walker, who has been convicted of multiple counts of violating Section 924(c)(1) which were charged in the same indictment. See Deal, 508 U.S. at 131-34. Moreover, there is no conflict between 18 U.S.C. § 3553 and 18 U.S.C. § 924(c)(1). 18 U.S.C. § 3553(a) must be read in conjunction with 18 U.S.C. § 3553(e), which prohibits the courts from sentencing a defendant below the statutory mandatory minimum sentence unless the Government files a motion permitting such departure. See 18 U.S.C. § 3553(e). The District Court, therefore, properly imposed Walker's consecutive mandatory minimum sentences pursuant to 18 U.S.C. § 3553(e). We hold, accordingly, that principles of statutory construction did not require the District Court to sentence Walker to a term of imprisonment that omitted the 55-year consecutive mandatory minimum sentence required by Section 924(c)(1).

For the reasons set forth above, we reject Walker's constitutional and statutory construction challenges to his 55-year

20

consecutive mandatory minimum sentence and affirm the sentence imposed by the District Court.