NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1381

UNITED STATES OF AMERICA

v.

CHRISTOPHER SMITH,
a/k/a
JUGHEAD

Christopher Smith,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 02-cr-00172-026
(Honorable Stewart Dalzell)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2010

Before:  SCIRICA, STAPLETON and ROTH, Circuit Judges.

(Filed:  July 15, 2011)

OPINION OF THE COURT

SCIRICA, *Circuit Judge*.

Christopher Smith appeals his sentence imposed on remand under *United States v. Booker*, 543 U.S. 220 (2005). We will affirm.

I.

In 2002, a grand jury in the Eastern District of Pennsylvania indicted thirty-six defendants with conspiracy to distribute more than five kilograms of cocaine and more than fifty grams of cocaine base ("crack"). Defendant Christopher Smith was part of the Courtney Carter organization, consisting of many members who distributed controlled substances, including cocaine and crack, in Pennsylvania, Delaware, and other locations. Between 1997 and 2002, the conspiracy distributed more than 600 kilograms of cocaine and more than 400 kilograms of crack with gross revenues that exceeded $24,000,000.

The drug conspiracy occasioned numerous acts of violence including a murder. Smith was a "hustler" working various street corners and also a "gun" or enforcer, protecting the corners from rival drug organizations. There were several violent acts and in 1999-2000 co-conspirators, including Smith, engaged in a turf war with another drug organization known as "Zip World" or "Zipnicks." On at least three occasions, the two gangs exchanged gunfire. In January 2000, Smith and a co-conspirator shot and killed Grayling Craig, a member of the rival organization. In February 2000, Smith and co-conspirators exchanged gunfire with the rival gang and a bystander was wounded.

On January 30, 2004, a jury convicted Christopher Smith of conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 and § 841(a)(1), and of the use

2

of a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The jury, through special interrogatories, found Smith and his co-conspirators responsible for distribution of more than five kilograms of cocaine and fifty grams of cocaine base. The District Court adopted the *Presentence Investigation Report, Addenda and Update*[1] which designated a base offense level of 38 under § 2D1.1(c)(1). Under § 2D.1(d)(1) and in view of the fact that Grayling Craig was killed under circumstances that would constitute murder under 18 U.S.C. § 111, the court found § 2A1.1 applied, raising the base offense level to 43. In addition, the court found there was evidence at trial of Smith's repeated attempts to obstruct justice by intimidating the government's cooperating witnesses. Consequently, the court raised the base offense level two points to 45[2] under § 3C1.1. Smith's total offense level of 45 and his criminal history category of III resulted in a guideline sentence of life imprisonment. The court imposed a life sentence on Count One and an additional thirty years' imprisonment consecutive to the sentence on Count One (a five-year mandatory consecutive sentence on Count 119, and a 25-year mandatory consecutive sentence on Count 121). Smith appealed his sentence.

---

[1]The PSR determined Smith was responsible for distribution of more than 1.5 kilograms of powder cocaine and more than 150 kilograms of crack. The guidelines specify these quantities have the marijuana equivalent of 60,000 kilograms. It also determined that the base offense level for a conspiracy to distribute cocaine was 38. Based on an offense level of 38 and a criminal history category of III, for Count One, it determined that the guideline range was 292 to 365 month in prison. The maximum statutory term of imprisonment was life with a mandatory minimum of ten years.

[2]An offense level of more than 43 is treated as an offense level of 43 under the guidelines.

We affirmed his convictions on all three counts and affirmed the sentences imposed on Counts 119 and 121 (mandatory consecutive terms of five years and twenty-five years respectively). We vacated the life sentence on Count One and remanded for resentencing under the advisory guidelines set forth in *Booker*. *See United States v. Smith*, 252 Fed. App'x 431 (3d Cir. 2007).

On remand, the District Court acknowledged it had the discretion to vary downwards under *Booker* but chose not to do so. The court, noting the offenses at issue involved a murder and threats to government witnesses, found Smith was a "dangerous, remorseless offender." Additionally, the court "credited" two intervening murder convictions, resulting in a criminal history category of VI. The court again sentenced Smith to life imprisonment on Count One.

## II.

Smith contends the District Court violated his Due Process and Sixth Amendment rights when it determined by a preponderance of the evidence: a) that he committed murder; b) that he obstructed justice; and c) the specific amount of drugs involved in the crime. Smith argues this was both a trial error, as the facts were not submitted to the jury, and a sentencing error, as the trial court calculated Smith's sentence under the guidelines using facts not found by the jury.

In *Booker,* the Supreme Court rendered the sentencing guidelines advisory. 543 U.S. at 259-60. Post-*Booker*, a trial judge has discretion to sentence in light of the

4

statutory maximum and statutory minimum provisions and the sentencing factors listed in 18 U.S.C. § 3553(a). *See United States v. Grier,* 475 F.3d 556, 567-68, 571 (3d Cir. 2006) (en banc).

The failure to submit the disputed facts to the jury was not error. We reviewed a similar question en banc in *Grier.* The question in *Grier* was whether the Due Process Clause required a jury (or judge at a bench trial) to determine beyond a reasonable doubt facts relevant to sentencing guidelines enhancements, particularly those constituting a separate offense. *Id.* at 561. Judicial fact-finding in applying advisory sentencing guidelines does not conflict with the defendant's right to a jury trial and the requirement of proof beyond reasonable doubt under the Fifth and Sixth Amendment so long as he has been convicted beyond a reasonable doubt of the predicate facts of unlawful conduct, "triggering a statutory maximum penalty." *Id.* at 562. The guidelines (and possible enhancements) do not increase the maximum punishment to which the defendant is exposed, but rather inform the judge's discretion as to the proper sentence within the statutory minimum and statutory maximum sentences. Accordingly, facts relevant to application of the guidelines are not elements of a crime and do not trigger the rights recognized in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Grier*, 475 F.3d at 567.

The District Court did not err by sentencing Smith to life imprisonment. Under 21 U.S.C. § 841, the statutory maximum sentence to which a defendant is exposed is life when the offense involves more than five kilograms of powder cocaine. 21 U.S.C. §

5

841(b)(1)(A). The jury found Smith violated 21 U.S.C. § 846 and that the offense involved more than five kilograms of powder cocaine and more than fifty grams of cocaine base. The District Court imposed a sentence equivalent to the maximum statutory penalty authorized by the jury's verdict. The court did not violate Smith's Due Process and Six Amendment rights at trial when facts relevant to application of the sentencing guidelines were not submitted to the jury.

Smith similarly argues that use of facts not found by the jury at sentencing was error. Because the jury did not need to make specific findings on these facts to subject him to a maximum penalty of life imprisonment, the trial court was permitted to find such facts at sentencing.

### III.

Smith also contends the court erred by increasing his criminal history category from III to VI at resentencing as a result of two intervening murder convictions. We generally review sentencing decisions for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). But as Smith did not object,[3] we review for plain error under Fed. R. Crim. P. 52 (b). *See United States v. Olano,* 507 U.S. 725, 732 (1993). To find plain error, there 1) must be an error, 2) the error must be "plain" (a term synonymous with "clear" or

---

[3]At resentencing, Smith's counsel responded to the District Court's inquiry about this change in his criminal history, "no problems, your Honor, as to the convictions."

"obvious"), and 3) the error must "affect substantial rights" (meaning that the error must be prejudicial, affecting the outcome of the district court proceedings). *Id.*

The District Court did not commit error, let alone plain error, when it increased Smith's criminal history category from III to VI. The court correctly applied the sentencing guidelines and 18 U.S.C. § 3553(a). Under U.S.S.G. § 4A1.2(a)(1), Smith's additional homicide convictions added points to raise his criminal history category.[4] Congress has directed "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. When considering whether a defendant's post-conviction rehabilitation should be considered at resentencing, the Supreme Court recently noted the "plain language of § 3661 makes no distinction between a defendant's initial sentencing and a subsequent resentencing after a prior sentence has been set aside on appeal." *Pepper v. United States*, --- U.S. ----, 131 S. Ct. 1229, 1241 (2011). In *Pepper*, the Court held that the District Court was not bound by a prior calculation of the sentencing guidelines when

[4]The Guidelines application notes define "Prior sentencing" as:

> a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. A sentence imposed after the defendant's commencement of the instant offence, but prior to sentencing on the instance offence, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.

U.S.S.G. § 4A1.2 cmt. n.1.

7

imposing a new sentence *de novo* following a *Booker* remand. *Id.* at 1250. We find no error, let alone plain error, when on remand the court applied the sentencing factors in 18 U.S.C. § 3553(a) (requiring consideration of the defendant's history and applicable sentencing guidelines, among other factors) by taking into account the intervening convictions for murder.

IV.

Finally, Smith alleges a violation of the Cruel and Unusual Punishment Clause because the sentence was not reasonable. We review the reasonableness of a sentence in light of the sentencing factors articulated in § 3553(a). *United States v. King,* 454 F.3d 187, 194 (3d Cir. 2006). Our review under the Eight Amendment is guided by factors such as the seriousness of the offense and harshness of the penalty in light of sentences in- and outside of the jurisdiction, with primary emphasis on relationship between the seriousness of the offense and harshness of the penalty. *United States v. Walker*, 473 F.3d 71, 81-82 (3d Cir. 2007).

We reject Smith's contention that the sentence of life imprisonment for participating in a massive drug conspiracy involving the murder of a rival drug dealer and the shooting of an innocent bystander is cruel and unusual or unreasonable. The court took into account the seriousness of the crime, potential range of penalties, and Smith's personal characteristics including his extensive criminal history and his participation in at

least three murders.  We see no procedural or substantive error in the sentence.  The sentence was reasonable.

V.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.