NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2545
_____

UNITED STATES OF AMERICA

v.

COREY CRAWFORD,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-10-cr-00059-004)
District Judge: Honorable Harvey Bartle, III

_____

Submitted Under Third Circuit LAR 34.1(a)
September 18, 2012

Before: AMBRO, GREENAWAY, Jr., and TASHIMA,[*] Circuit Judges

(Opinion filed: September 24, 2012)

_____

OPINION

_____

_____

[*] Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit Court of
Appeals, sitting by designation.

AMBRO, Circuit Judge

Following a four-day jury trial, Appellant Corey Crawford was found guilty of one count of conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a), three counts of robbery in violation of 18 U.S.C. § 1951(a), and two counts of carrying a firearm, or aiding and abetting the use and carrying of a firearm, in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  Crawford was sentenced to 505 months' imprisonment. He appeals both his conviction and sentence.  We affirm.

I.

Because we write solely for the parties, we note only those facts relevant to our decision.  In June of 2009, Crawford and three co-conspirators—Marques Reavis, Michael Spivey, and Marcus Spivey—engaged in a series of armed robberies of McDonald's restaurants.  The first robbery occurred at a McDonald's restaurant where Crawford was employed.  During a late-night shift Crawford left a drive-through window open.  Reavis and the Spiveys entered the restaurant through the open window wearing gloves and masks and carrying a plastic gun, a BB gun, and a bat.  They hit and kicked both of the employees working with Crawford that night, took cash and property from them, and forced one of them to open the restaurant's safe in order to steal cash from the restaurant.  Crawford played along with the robbery by lying on the ground with his co-workers while the store was robbed, although his personal belongings were not taken nor was he struck by any of the robbers.  After the robbery, Crawford accompanied his two co-workers to the police department and gave a signed statement about the robbery.

2

Using robbery proceeds, Reavis and Crawford purchased a gun and taser that they used in the next two robberies. Both of those robberies followed the same course of events. Reavis and the Spiveys entered the restaurant through an open drive-through window wearing masks and gloves and carrying the BB gun, firearm, and taser. They tied up the employees using plastic ties, took cash, cell phones and credit cards, and forced the manager to open the restaurant's safe. For both robberies, Crawford supplied his taser and drove the getaway car.

During the subsequent investigation, police searched the Spiveys' residence and Reavis's car, where they found black clothing, the taser, and plastic ties similar to those used to secure the employees. Crawford was arrested by FBI Special Agent Carpenter. After being advised of his rights, he admitted to participating in all three robberies.

At trial, the Government presented testimony from employees of each restaurant, Reavis, and the investigating officers, as well as surveillance video of two of the robberies, cell phone records showing communication between Reavis and Crawford on the nights of the robberies, and the physical evidence discovered by police.

Crawford also testified. He admitted to being friends with Reavis, but claimed that he was not involved in any of the robberies. He explained that he did not confess to Agent Carpenter. Rather, he told Agent Carpenter that Reavis had admitted committing the robberies with the Spiveys. Crawford testified that he simply conveyed what he had been told by Reavis about the robberies.

During her closing argument, the prosecutor argued that the jury should not believe Crawford's trial testimony about his statement to Agent Carpenter:

3

And remember what he said, because I'll be honest with you, it was truly laughable at the moment, and it made no sense to me. And I submit that it should not make any sense to you what he said about that statement.

The District Court interrupted "Don't vouch for the witnesses or vouch for the testimony . . . ." The prosecutor continued:

And I certainly don't want to vouch for the witnesses because your recall of the evidence is going to control. And remember what he said. He said that he thought he was just there as a witness when he was talking to Agent Carpenter. Ask yourself, does that make sense?

Supp. App. 617. She then discussed Agent Carpenter's testimony and again asked whether "it make[s] sense what Corey Crawford told you on Friday[.] I submit to you that it doesn't." *Id.* 619. At other points in her closing argument and rebuttal to defense counsel's closing, the prosecutor stated that an argument or testimony did or did not "make sense."

Crawford was convicted of all charged offenses. Based on an offense level of 29 and a criminal history category of IV, Crawford's Guidelines range was 121 to 151 months' imprisonment plus two consecutive mandatory minimum sentences, one for seven years and the other for twenty-five years, for the use of a firearm during a crime of violence. Crawford represented himself *pro se* at the sentencing hearing. He did not object to the Guidelines calculation or the offense conduct described in the presentence report. On June 7, 2011, the Court sentenced Crawford to 505 months' of incarceration.

II.

Crawford raises three issues on appeal. He first argues that the prosecutor engaged in misconduct by vouching for the credibility of witnesses during her closing

4

argument by stating that some testimony made sense and other testimony did not. Crawford also argues that the District Court misstated the law on conspiracy when reading the jury instruction to the jury. Finally, he asserts that the 505-month sentence imposed by the District Court was procedurally and substantially unreasonable.

### III.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

Crawford did not contemporaneously object to either the prosecutor's statements during closing argument or the District Court's misstatement while reading the jury instruction. Thus we review those statements for plain error. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). We review sentences for both procedural and substantive reasonableness, applying an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (*en banc*). The party challenging the sentence bears the burden of demonstrating unreasonsableness. *Tomko*, 562 F.3d at 567.

### IV.

Crawford asserts that the prosecutor engaged in misconduct when she made comments such as Crawford's explanation of his confession "made no sense to me" and that his earlier confession did "make[] sense."

A prosecutor commits misconduct by vouching when she "(1) assures the jury that the testimony of a government witness is credible" and (2) bases that assurance "on either [her] claimed personal knowledge or other information not contained in the record."

5

*United States v. Lore*, 430 F.3d 190, 211 (3d Cir. 2005). A prosecutor "may state [her]

views of what the evidence shows and the inferences and conclusions that the evidence

supports." *United States v. Zehrbach*, 47 F.3d 1252, 1265 n.11 (3d Cir. 1995) (*en banc*).

The prosecutor's arguments about Crawford's trial explanation of his earlier

confession were based on evidence submitted at trial. She was contrasting Crawford's

explanation with the testimony, videos, and other evidence submitted to the jury. Other

arguments that testimony or defense counsel's arguments did or did not make sense were

likewise based on evidence submitted at trial. There is no error here. There is also no

error in the prosecutor's use of the phrase "I submit to you." *United States v. Walker*,

155 F.3d 180, 188 (3d Cir. 1998) ("The phrase, 'I submit to you that,' without more, does

not constitute vouching.").

Crawford next contends that the District Court's instruction on conspiracy

misstated the law. During his reading of the jury charge, the District Court mistakenly

stated that the Government did not have to prove that the conspirators agreed to commit

one of the object crimes before realizing the mistake and restating that sentence of the

charge correctly.

> The indictment charges a conspiracy to commit several Federal crimes. The
> Government does not have to prove that the alleged conspirators agreed to commit
> at least one of the object crimes, and you must unanimously agree on which crime.
> I think I -- let me rephrase that. The Government charged a conspiracy to commit
> several crimes. The Government does not have -- does have to prove that the
> alleged conspirators agreed to commit at least one of the object crimes, and you
> must unanimously agree on which crime.
> You cannot find Corey Crawford guilty of conspiracy unless you unanimously
> agree that the same Federal crimes were the object of the conspiracy. It is not
> enough if some of you agree that one of the charged crimes was the objective of

the conspiracy and others agree that a different crime was the object of the conspiracy.

App. 6–7.

"Jury instructions must be read as a whole." *United States v. Flores*, 454 F.3d 149, 157 (3d Cir. 2006). An instruction is not in error if "the instruction fairly and adequately submits the issues in the case to the jury without confusing or misleading the jurors." *United States v. Simon*, 995 F.2d 1236, 1243 n.11 (3d Cir. 1993) (internal quotations and alterations omitted).

Although the District Court incorrectly added the word "not" during the initial reading of the charge, it realized this mistake and re-read the instruction correctly. The Court reinforced the correct instruction in the next two sentences. The written charge supplied to the jury correctly stated the law. As a whole, the instruction was not confusing or misleading. We find no error here.

Further, even if either the prosecutor's statement and/or the District Court's misstatement (later corrected) in the jury charge were improper, they were harmless. Neither the prosecutor's statements nor the District Court's slip of the tongue seriously affected the "fairness, integrity or public reputation of [the] judicial proceedings." *United States v. Peppers*, 302 F.3d 120, 125 (3d Cir. 2002). Moreover, evidence of Crawford's guilt was substantial if not overwhelming.

V.

Crawford also contends that the sentence of 505 months' imprisonment is unreasonable because the District Court did not properly consider the factors enumerated

7

in 18 U.S.C. § 3553(a) and failed to justify a sentence that amounts to a life sentence. Crawford also argues that the length of the sentence is unconstitutionally disproportionate and unreasonable.

District courts must follow a three-step process in imposing a sentence: (1) calculate the applicable Guidelines range; (2) formally rule on departure motions; and (3) exercise their discretion by considering relevant factors from § 3553(a). *United States v. Gunter,* 462 F.3d 237, 247 (3d Cir. 2006). If a sentence is "procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [D]istrict [C]ourt provided." *Tomko*, 562 F.3d at 568.

To the extent that Crawford challenges the mandatory sentences imposed under section 924(c), we have held that 924(c)'s sentencing scheme does not violate the Eighth Amendment. *United States v. Walker*, 473 F.3d 71, 84 (3d Cir. 2007). Nor is there procedural or substantive error. After determining the aggregate Guidelines range to be 505 to 535 months' imprisonment (taking into account the mandatory minimum sentences to be applied consecutively), the District Court discussed the § 3553(a) factors, including the Guidelines range, the nature of Crawford's offenses, his criminal history, and the need to protect the public and deter future criminal conduct. App. 8–9. Although a sentence of over forty-two years for the offenses here is equivalent to a life sentence, we do not conclude that the District Court abused its discretion by sentencing Crawford as it did in the context we have before us.

\*    \*    \*    \*    \*

8

We affirm Crawford's conviction and sentence.